PEOPLE v HORNSBY

Docket No. 227945. Submitted March 6, 2002, at Detroit. Decided May 24, 2002, at 9:05 A.M.

James Q. Hornsby was convicted by a jury in the Genesee Circuit Court, Judith A. Fullerton, J., of armed robbery, carrying a concealed weapon, and possession of a firearm during the commission of a felony and was sentenced as a third-offense habitual offender to thirty to fifty years' imprisonment for the armed robbery conviction and to a concurrent term of five to ten years' imprisonment for the concealed weapon conviction and to a consecutive term of five years' imprisonment for the felony-firearm conviction on the basis of it being a second conviction of that offense. The charges arose out of the defendant forcing at gunpoint the supervisor of a drug store to open the store's safe and give the defendant the money in the safe and then threatening to shoot the supervisor and other employees if the supervisor did not remain in the store's office for five minutes after his departure. The court denied the defendant's motion to suppress the in-court identification of him by the store employees, finding that the defendant had not established that the in-court identifications were the product of an impermissibly suggestive pretrial lineup procedure. The defendant appealed.

The Court of Appeals *held*:

1. There is nothing in the lineup procedure or the lineup itself to support the defendant's assertion of impermissible suggestiveness. Although the participants in the lineup did not exactly mirror each other in height and weight, the photographs of the lineup fail to reveal anything that significantly distinguishes the defendant from the other participants when the participants are viewed as a group. Further, there was nothing in the manner in which the lineup was conducted that was impermissibly suggestive. The trial court properly denied the defendant's motion to suppress the witnesses' in-court identification.

2. The trial court properly scored offense variable 7, aggravated physical abuse, MCL 777.37, as fifty points on the basis that the victim was treated with terrorism. Terrorism is defined for the purpose of that offense variable as "conduct designed to substantially increase the fear and anxiety a victim suffers during the offense."

MCL 777.37(2)(a). The testimony of the shift supervisor that the defendant robbed her at gunpoint, including cocking the weapon, and threatened to shoot her and the other employees if she did not wait five minutes before she called the police were sufficient to support the court's finding that the defendant had engaged in conduct designed to substantially increase the fear and anxiety of the victim.

3. Before the defendant's arraignment on the information on the underlying charges, the prosecution gave notice to the defendant of an intent to seek enhancement of the defendant's sentence under MCL 769.11, listing on the notice a 1995 conviction of attempted resisting and obstructing and a 1996 conviction of armed robbery. More than twenty-one days after the defendant's arraignment on the information on the underlying charges, the prosecution filed an amended notice that replaced the incorrect robbery conviction with a 1992 conviction of resisting and obstructing. The defendant challenged the imposition of the enhanced sentences as a third-offense habitual offender on the basis that the amended notice did not satisfy the requirement of MCL 769.13 that the prosecution give written notice of an intent to seek enhancement of a defendant's sentence within twenty-one days of the defendant's arraignment on the information. Because the defendant received timely notice that the prosecution intended to seek enhancement of the defendant's sentences on the basis that the defendant was a third-offense habitual offender, and because the tardy amended notice did not change the potential consequences of the defendant's conviction as an habitual offender or prejudice the defendant, the trial court properly sentenced the defendant as a third-offense habitual offender.

4. The sentence imposed by the court with respect to the conviction of carrying a concealed weapon exceeded the legislatively mandated sentence range. Although a court may depart from the sentencing guidelines range if it has a substantial and compelling reason to do so, it must state its reason for doing so on the record. Because the trial court did not clearly articulate on the record either its intent to depart from the guidelines range or its reason for doing so, the defendant's sentence for carrying a concealed weapon must be vacated and the matter must be remanded for resentencing with respect to that conviction.

Convictions affirmed, sentences for armed robbery and felony-firearm affirmed, and matter remanded for resentencing with respect to the conviction of carrying a concealed weapon.

1. SENTENCES — STATUTORY OFFENSE VARIABLES — AGGRAVATED PHYSICAL ABUSE — TERRORISM.

A sentencing court may properly score offense variable 7, aggravated physical abuse, as fifty points on the basis that the victim was treated with terrorism where the defendant holds the victim at gunpoint, cocks the firearm, and threatens to shoot the victim and others unless the victim complies with the defendant's wishes (MCL 777.37).

2. SENTENCES — HABITUAL OFFENDERS — NOTICE — TIMELINESS — SUPPLEMENTAL INFORMATIONS.

A prosecutor may amend a supplemental information charging a defendant as a third-offense habitual offender more than twenty-one days after the defendant's arraignment on the information where the prosecutor gave timely notice of the intention to seek enhancement of the defendant's sentence on the basis that the defendant was a third-offense habitual offender, the amendment does not change the potential consequences of the defendant's conviction as an habitual offender but rather merely substitutes a different prior conviction on which the prosecutor intended to rely, and the defendant is not prejudiced by the amendment (MCL 769.13).

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, *Arthur A. Busch*, Prosecuting Attorney, and *Timothy J. Cassady*, Chief, Appeals, Research, and Training, for the people.

State Appellate Defender (by *Gail Rodwan*), for the defendant on appeal.

Before: HOOD, P.J., and GAGE and MURRAY, JJ.

GAGE, J. Following a jury trial, defendant was convicted of armed robbery, MCL 750.529, carrying a concealed weapon (CCW), MCL 750.227, and possession of a firearm during the commission of a felony, MCL 750.227b. The trial court sentenced defendant as a third-offense habitual offender, MCL 769.11, to enhanced sentences of thirty to fifty years' imprisonment for the armed robbery conviction and to a concurrent term of five to ten years' imprisonment for the CCW conviction and sentenced him to a consecu-

tive term of five years' imprisonment for the felony-firearm conviction, defendant's second conviction for that offense. Defendant appeals as of right. We affirm defendant's convictions and his sentences for armed robbery and felony-firearm, but vacate the CCW sentence and remand for partial resentencing.

I

Defendant's convictions stem from his June 7, 1999, robbery of an Arbor drugstore in Grand Blanc Township. Defendant entered the store shortly before closing time and placed some items in a handheld shopping basket. He approached a cashier and asked to speak to the store manager, ostensibly to obtain help in locating items he wished to purchase. An employee directed defendant to the shift supervisor, and she and defendant went to locate the items sought by defendant. As they stood alone in an aisle of the store, defendant produced a handgun and threatened to shoot the supervisor and the other store employees unless the supervisor took him to the store safe. The two then went into the manager's office, where defendant forced the supervisor to open the safe and place money in a manila envelope. Defendant then left the store after again threatening to shoot the supervisor and the other employees if she did not remain in the office for five minutes after his departure. The police ultimately apprehended defendant through the use of fingerprint analysis on a package of light bulbs found in the shopping basket that defendant left inside the store office.

II

Defendant first contends that the trial court erred in permitting the shift supervisor and another employ-

ee to give identification testimony at his trial. According to defendant, both witnesses attended a pretrial custodial lineup that was impermissibly suggestive because of the physical differences between defendant and the other lineup participants and because the witnesses had no independent basis from which to identify him at trial.

This Court will not reverse a trial court's decision to admit identification evidence unless it finds the decision clearly erroneous. Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake was made. *People v Williams*, 244 Mich App 533, 537; 624 NW2d 575 (2001). A lineup can be so suggestive and conducive to irreparable misidentification that it denies an accused due process of law. *People v Anderson*, 389 Mich 155, 169; 205 NW2d 461 (1973). The fairness of an identification procedure is evaluated in light of the total circumstances to determine whether the procedure was so impermissibly suggestive that it led to a substantial likelihood of misidentification. *People v Kurylczyk*, 443 Mich 289, 306, 311-312 (GRIFFIN, J.), 318 (BOYLE, J.); 505 NW2d 528 (1993). Physical differences among the lineup participants do not necessarily render the procedure defective and are significant only to the extent that they are apparent to the witness and substantially distinguish the defendant from the other lineup participants. *Kurylczyk, supra* at 312 (GRIFFIN, J.), 318 (BOYLE, J.). Physical differences generally relate only to the weight of an identification and not to its admissibility. *People v Sawyer*, 222 Mich App 1, 3; 564 NW2d 62 (1997).

In this case, we find nothing in either the lineup procedure or the lineup itself to support defendant's assertion of impermissible suggestiveness. We first note that the photographic evidence provided to this

Court reveals no discrepancy among the physical characteristics of the lineup participants so readily apparent as to form a basis for the exclusion of the identification testimony. Although the lineup participants did not exactly mirror each other in height and weight, we find nothing significantly distinguishing defendant from the other participants when the participants are viewed as a group. We also note that the witnesses' testimony during the suppression hearing supports the prosecutor's claim that neither witness singled out defendant because of the fact that his physical characteristics differed markedly from those of the other participants.

Furthermore, defendant points to nothing in the lineup procedure itself tending to show that the conduct of the lineup was impermissibly suggestive. Neither eyewitness was promised before the lineup that the person who robbed the store would be present in the lineup. Moreover, defendant was represented by counsel during the lineup selection procedure, and counsel had the opportunity to examine the participants before the lineup and assist with their placements within the lineup. Counsel explained that he deliberately placed the participants in their positions in the lineup to minimize the differences in their heights. Counsel did not object to the individuals used in the lineup and explicitly stated during the suppression hearing that he found the participants' height and weight differences to be minor.

We find no error in the trial court's decision that the lineup procedure was proper, and conclude that the trial court correctly allowed the prosecutor to present both the challenged pretrial and in-court identification testimony of the eyewitnesses.

### III

Defendant also argues that the trial court erred in scoring fifty points for offense variable 7 (OV 7) when calculating the legislative sentencing guidelines for armed robbery on the basis of "terrorism" in defendant's actions toward the shift manager during the robbery. A sentencing court has discretion in determining the number of points to be scored, provided that evidence of record adequately supports a particular score. *People v Leversee*, 243 Mich App 337, 349; 622 NW2d 325 (2000); *People v Derbeck*, 202 Mich App 443, 449; 509 NW2d 534 (1993). "Scoring decisions for which there is any evidence in support will be upheld." *People v Elliott*, 215 Mich App 259, 260; 544 NW2d 748 (1996).

We find that the trial court did not abuse its discretion in scoring OV 7 as fifty points. Under MCL 777.37, the trial court must score OV 7 as fifty points if the court finds evidence of "terrorism," which MCL 777.37(2)(a) defines as "conduct designed to substantially increase the fear and anxiety a victim suffers during the offense." The testimony of the shift supervisor, whom defendant held at gunpoint in the manager's office while he forced her to transfer money from the store safe into a manila envelope, supported the scoring decision. The shift supervisor testified that when defendant first pulled out his gun he threatened that if she did not give him what he wanted he would shoot her and everybody else in the store. Throughout the robbery, defendant held the gun, and at one point the supervisor heard the gun click as if being cocked when someone began turning the knob of the closed manager's office door. The supervisor also stated that once she had given defendant the money, defendant told her to wait five min-

utes before she called the police and again threatened that if she did not do as he said he would kill her and the other employees. The supervisor believed defendant's threats, refusing to leave the office even after another employee advised her that defendant had gone. Defendant did more than simply produce a weapon and demand money. Defendant's actions in cocking the weapon and repeatedly threatening the life of the shift supervisor and the other employees supported the court's finding that he deliberately engaged in "conduct designed to substantially increase the fear and anxiety a victim suffers during the offense." *People v Johnson*, 202 Mich App 281, 289; 508 NW2d 509 (1993). Consequently, we find no error in the trial court's scoring decision.

IV

Defendant next asserts that the trial court erred in sentencing him as a third-offense habitual offender under MCL 769.11. Defendant reasons that although the prosecutor timely filed a notice to seek sentence enhancement in accordance with MCL 769.13, a later, untimely amendment of the notice to correct the prior felonies enumerated therein should have foreclosed sentence enhancement under the statute. Defendant's argument involving the meaning of MCL 769.13 raises an issue of statutory interpretation that we review de novo. *People v Webb*, 458 Mich 265, 274; 580 NW2d 884 (1998).

On September 15, 1999, the prosecutor filed a notice that it intended to seek enhancement of defendant's sentence in this case under MCL 769.11. According to the notice, defendant's prior convictions of attempted resisting and obstructing in 1995 and armed robbery in 1996 supported the enhancement.

The prosecutor mailed a copy of the notice to defendant on the same day, and the prosecutor also maintained that defendant received another copy of the notice at his arraignment on September 20, 1999. On October 15, 1999, the prosecutor filed an amendment to this notice that replaced the incorrect, underlying armed robbery conviction with a 1992 resisting and obstructing conviction. When defendant challenged this amendment during his sentencing hearing, the trial court denied defendant's motion to prevent the enhancement because the amendment did not alter the fact that defendant had been provided proper notice of the intent to seek sentence enhancement on the basis of his status as a third-offense habitual offender.

MCL 769.13 provides in pertinent part as follows:

> (1) In a criminal action, the prosecuting attorney may · seek to enhance the sentence of the defendant as provided under [MCL 769.10, 769.11, or 769.12] by filing a written notice of his or her intent to do so within 21 days after the defendant's arraignment on the information charging the underlying offense or, if arraignment is waived, within 21 days after the filing of the information charging the underlying offense.

In *People v Ellis*, 224 Mich App 752, 755; 569 NW2d 917 (1997), this Court held that under § 13, the prosecutor may not amend a notice to seek enhancement to include additional prior convictions after the twenty-one-day period. The prosecutor in *Ellis* initially filed a timely notice to seek sentence enhancement on the basis of the defendant's status as a second-offense habitual offender. Six weeks later, the prosecutor filed an amended supplemental information alleging two more prior convictions, thus changing the supplemental information to habitual offender, fourth offense. *Ellis, supra.* This Court explained as

follows that the prosecutor's amendment was inappropriate:

> Here, the controlling statute, MCL 769.13 . . . requires the prosecutor to give notice to a defendant within twenty-one days of arraignment of the prior convictions to be relied on for purposes of sentence enhancement. Reading this statute in harmony with MCL 767.76 . . . [which generally allows amendment of an indictment as a matter of the court's discretion, as long as the defendant does not suffer prejudice], we hold that the supplemental information may be amended outside the statutory period only to the extent that the proposed amendment does not relate to the specific requirements of MCL 769.13 . . . , i.e., the amendment may not relate to additional prior convictions not included in the timely filed supplemental information. To hold otherwise would be to permit prosecutors to avoid making the necessary "prompt" decision regarding the level of supplementation, if any, they wish to pursue and would materially alter the "potential consequences" to the accused of conviction or plea. [*Ellis, supra* at 756-757.]

While defendant maintains that *Ellis* forbids all amendments to a notice to seek sentence enhancement under § 13, this Court's decision in *Ellis* does not support such a conclusion. In *Ellis*, the Court specifically distinguished the use of an amendment to change the status of an offender from an amendment of the notice to correct an error in the initial notice that did not otherwise affect the level of defendant's potential sentence enhancement.

> This case is thus distinguishable from *People v Manning*, 163 Mich App 641; 415 NW2d 1 (1987), where the Court upheld an amendment of a supplemental information outside the fourteen-day rule set forth in [*People v Shelton*, 412 Mich 565, 569; 315 NW2d 537 (1982).][1] In *Manning*, the amended supplemental information corrected an error in

---

[1] At the time of the *Manning* decision, a fourteen-day notice rule applied. The Supreme Court established this rule in *Shelton, supra*.

the specific convictions that formed the basis of the habitual offender, fourth offense charge. However, the amendment did not elevate the level of the supplemental charge. [*Ellis*, at 757, n 2.]

In *Manning, supra* at 644, the prosecutor filed a timely supplemental information charging habitual offender, fourth offense. Two months later, the prosecutor moved to amend the habitual offender notice to correct an error regarding the defendant's criminal record. *Id.* This Court approved the amendment after noting that the purpose of the fourteen-day rule enumerated in *Shelton* was "to provide a defendant with notice, at an early stage of the proceedings, of the potential consequences should the defendant be convicted of the underlying offense." *Id.*, citing *Shelton, supra* at 569. The *Manning* Court then held that "the expressed purpose of the underlying *Shelton* rule has been effectuated" despite the later, untimely amendment, because the amendment had not affected the defendant's receipt of "the required notice that if he was convicted of the underlying felony he risked conviction for felony offender, fourth offense." *Manning, supra* at 644.

Therefore, contrary to defendant's position on appeal, a recognized difference exists between an amendment of a notice to seek sentence enhancement that attempts to impose more severe adverse consequences to a defendant and one that does not. After reading *Ellis* and *Manning* together, we conclude that *Ellis* does not preclude the amendment of a timely sentence enhancement information to correct a technical defect where the amendment does not otherwise increase the potential sentence consequences.

In this case, the amended information did not increase defendant's potential sentence because the

amendment did not change defendant's habitual offender level. Defendant does not dispute that he received timely notice that the prosecutor sought to charge him as a third-offense habitual offender and does not dispute the validity of the underlying offenses supporting his status as a third-offense habitual offender. Apart from claiming a statutory violation, he has not alleged any prejudice arising from the allegedly untimely amendment. Because the amendment did not change in any way the potential consequences of a conviction, of which defendant had received proper notice, we conclude that the trial court properly denied defendant's motion challenging the amendment of the notice to seek sentence enhancement and properly sentenced defendant as a third-offense habitual offender.

V

We lastly address defendant's contention that the trial court's sentence of five to ten years in prison for his CCW conviction impermissibly exceeded the sentence allowed under the legislative sentencing guidelines. Under the sentencing guidelines act, a trial court must impose a sentence in accordance with the legislatively prescribed sentence range. MCL 769.34(2); *People v Hegwood*, 465 Mich 432, 438; 636 NW2d 127 (2001); *People v Babcock*, 244 Mich App 64, 72; 624 NW2d 479 (2000). The court may depart from the legislative sentencing guidelines range only if it has a substantial and compelling reason to do so and if it states on the record the reason for departure. MCL 769.34(3); *Hegwood, supra* at 439-440. A court may not depart from a sentencing guidelines range because of a defendant's "gender, race, ethnicity, alienage, national origin, legal occupation, lack of employment, representation by appointed legal coun-

sel, . . . appearance in propria persona, or religion."
MCL 769.34(3)(a). The court also may not premise a
departure on an offense characteristic or offender
characteristic already considered in determining the
appropriate guidelines range unless the court explic-
itly finds from the facts of record that the characteris-
tic was given inadequate or disproportionate weight.
MCL 769.34(3)(b); *Babcock, supra* at 79.

In this case, a review of the sentencing hearing
transcript indicates that the trial court failed to prop-
erly place on the record any acknowledgement of the
limitations on its ability to sentence defendant to a
term that exceeds the guidelines range for the CCW
offense or even that it intended to sentence defendant
outside the guidelines range. Although the trial court
included a written amendment to the sentencing
guidelines form to the effect that it had found sub-
stantial and compelling reasons for the departure
because of defendant's extensive prior criminal
record and conviction of multiple charges arising
from the instant offense, the court failed to articulate
how defendant's prior and concurrent convictions,
which already were taken into account under the
guidelines scoring, see MCL 777.51 to 777.57, received
inadequate weight within the guidelines. The trial
court further failed to articulate how defendant's drug
addiction, the third rationale provided as justification
for departure, related to his current criminal activity
or in any way constituted a substantial and compel-
ling reason for departure, i.e., made defendant's case
an "exceptional" one justifying a guidelines departure.
*Babcock, supra* at 75. Accordingly, we vacate defen-
dant's CCW sentence and remand for partial resentenc-
ing consistent with this opinion.

We affirm defendant's convictions and his sen-
tences for armed robbery and felony-firearm, but

vacate his sentence for CCW and remand for resentencing with respect to this offense only. We do not retain jurisdiction.