# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DONTEAU DWONE DENNIS,

        Defendant-Appellant.

UNPUBLISHED
January 14, 2016

No.  323181
Wayne Circuit Court
LC No.  13-009967-FC

Before:  SAWYER, P.J., and K. F. KELLY and FORT HOOD, JJ.

PER CURIAM.

Defendant appeals as of right his bench trial convictions of carjacking, MCL 750.529a, two counts of armed robbery, MCL 750.529, possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, and felon in possession of a firearm (felon-in-possession), MCL 750.224f.  Defendant was sentenced, as a fourth habitual offender, MCL 769.12, to 11 years and 3 months to 20 years for the carjacking and armed robbery convictions, one to five years for the felon-in-possession conviction, and two years for the felony-firearm conviction.  We affirm.

This case arises out of a carjacking that occurred outside a beauty supply store in Detroit. A man walked up to the driver's side of the first victim's truck, pointed a shotgun through the open window at the driver, and ordered her and her passenger (the second victim) out of the vehicle.  The second victim's baby grandson was in the back seat, and her two children were inside the store.  The first victim managed to rescue the baby before the carjackers drove away in the truck.

The police subsequently recovered the carjacked truck and arrested defendant, who was driving it.  The police then sent a subpoena to the victims, who both picked defendant out of a photographic array.  Defendant's counsel was not present for either array.  The victims later identified defendant in court.

Defendant did not contest any elements of the charged offenses besides identity.  The trial court suppressed the first victim's pretrial identification because she saw photographs of defendant before picking his image out of a photographic array.  However, the court found that the in-court identifications, along with the second victim's pretrial identification, were sufficient

-1-

to prove beyond a reasonable doubt that defendant was the carjacker. It therefore convicted him of all charged offenses.

Defendant argues that the trial court should have suppressed the first victim's in-court identification because there was no adequate independent basis for it, that it was improper to conduct a photographic array while defendant was in custody, that the second victim's pretrial identification should have been suppressed as unduly suggestive, and that all identifications should have been suppressed due to poor witness credibility. We disagree. Defendant also argues that his Sixth Amendment right to counsel was violated when his attorney was not present for the photographic arrays. We agree.

Defendant first argues that the trial court should have suppressed the first witness's in-court identification for the same reasons it suppressed her pretrial identification: she knew defendant was arrested with her car, she used the internet to find pictures of him before picking him out of the photographic array, and she recognized him as he was waiting for his case to be called in court. Defendant argues that for these reasons the first victim's in-court identification of defendant is unreliable, and the trial court should not have admitted it into evidence.

An in-court identification may be admitted even after an improper photographic array if the prosecutor shows by clear and convincing evidence that there is an independent basis for the latter identification. *People v Kachar*, 400 Mich 78, 95; 252 NW2d 807 (1977). The inquiry focuses on the totality of the circumstances. *People v Gray*, 457 Mich 107, 115; 577 NW2d 92 (1998). The *Kachar* Court laid out a series of criteria for determining whether there is an adequate independent basis:

1. Prior relationship with or knowledge of the defendant.

2. The opportunity to observe the offense. This includes such factors as length of time of the observation, lighting, noise or other factor affecting sensory perception and proximity to the alleged criminal act.

3. Length of time between the offense and the disputed identification. . . .

4. Accuracy or discrepancies in the pre-lineup or show-up description and defendant's actual description.

5. Any previous proper identification or failure to identify the defendant.

6. Any identification prior to lineup or showup of another person as defendant.

7. [T]he nature of the alleged offense and the physical and psychological state of the victim. . . . Factors such as fatigue, nervous exhaustion, alcohol and drugs, and age and intelligence of the witness are obviously relevant.

8. Any idiosyncratic or special features of defendant. [*Kachar,* 400 Mich at 95-96 (internal quotations, citations and emphasis omitted).]

Most factors support the trial court's conclusion that there was an adequate independent basis for the first witness's in-court identification of defendant. Under the second factor, the court found that the first witness "had an ability to see [the carjacker]," that it was daylight, that she was face-to-face with the carjacker and got a very good look, and that despite her concern for the baby and the children inside the store her testimony was "credible." Regarding the fourth factor, the first witness's initial report of the carjacker's age, skin tone, and sex is consistent with defendant. While she described the carjacker as 3 to 4 inches shorter and 15 pounds lighter than defendant, these are relatively minor discrepancies in a description that generally matched defendant well.

Regarding the sixth factor, the first witness never identified anyone else as the carjacker. Under the seventh factor, while the first witness was under stress at the time she saw the carjacker, the court nevertheless found her testimony credible. There was no evidence that she was under the influence of drugs or alcohol, or that she was tired, or that her age or intelligence affected her ability to accurately identify the carjacker. The eighth factor supports the first witness's testimony because she recognized letters tattooed on defendant's arms.

A reviewing court may reverse a trial judge's decision to admit evidence only when it has a "definite and firm conviction that a mistake has been made." *People v McDade*, 301 Mich App 343, 356; 836 NW2d 266 (2013); *People v Barclay*, 208 Mich App 670, 675; 528 NW2d 842 (1995). Considering this, along with the totality of the circumstances and the specific factors enunciated by the Michigan Supreme Court in *Kachar,* the trial court's conclusion that there was clear and convincing evidence that the first victim had an independent basis to identify defendant in court was not clearly erroneous. See *Kachar,* 400 Mich at 95-96. This is especially true given the fact that the judge found the first victim had an excellent opportunity to see defendant's face and that she also recognized his arm tattoos.

Second, defendant contends that it was improper to conduct a photographic array because defendant was in custody at the time, which means only a corporeal lineup was permissible. Generally, it is true that photographic arrays are not permissible when a defendant is in custody. *People v Kurylczyk*, 443 Mich 289, 298; 505 NW2d 528 (1993). However, there is an exception when "[t]he subject refuses to participate in a lineup and by his actions would seek to destroy the value of the identification." *People v Anderson*, 389 Mich 155, 186 n 23; 205 NW2d 461 (1973), overruled in part on other grounds *People v Hickman*, 470 Mich 602; 684 NW2d 267 (2004). There is undisputed testimony that defendant refused to participate in a corporeal lineup. Thus, using a photographic array in this case was acceptable.

Third, defendant argues that the photographs chosen for the second victim's photographic array were not adequately consistent with the descriptions of the carjacker that both victims gave police, rendering the array unduly suggestive. However, even if defendant is correct in stating that the age and skin tone of the other pictured people are different from defendant's, such variations are not adequate to support his argument. "[P]hysical differences between a suspect and other lineup participants do not, in and of themselves, constitute impermissible suggestiveness . . . ." *McDade*, 301 Mich App at 357 (internal quotation marks omitted). Rather, "[p]hysical differences generally relate only to the weight of an identification and not to its admissibility." *People v Hornsby*, 251 Mich App 462, 466; 650 NW2d 700 (2002) (citation omitted). Thus, the photographic array was not unduly suggestive.

Fourth, defendant argues that the second victim's testimony regarding the identity of the carjacker was not credible because she stated that her attention remained on the carjacker while the second carjacker approached, even while the first victim was removing the baby from the back seat. The trial court's decision to admit this evidence is reviewed for clear error, and there is no basis to find that crediting the witness's testimony on these points was clearly erroneous. See *Barclay*, 208 Mich App at 675. Also, the credibility of witnesses is evaluated by the trier of fact, and is relevant to the weight the evidence is given, not its admissibility. *People v Eisen*, 296 Mich App 326, 331; 820 NW2d 229 (2012).

Finally, defendant argues that he was denied his Sixth Amendment right to counsel at the photographic array because he was in custody at the time of the array and his right to counsel had attached. Because he preserved this issue by arguing it in a motion to suppress evidence properly submitted to the trial court, the issue is preserved. Preserved issues related to admission of evidence are reviewed for clear error, meaning reversal is appropriate only where "the reviewing court is left with a definite and firm conviction that a mistake has been made." *McDade*, 301 Mich App at 356; *Barclay*, 208 Mich App at 675. Should the reviewing court find that there was a preserved constitutional error, it must decide if the error was structural, which requires reversal, or nonstructural, which requires this Court to "determine whether the beneficiary of the error has established that it is harmless beyond a reasonable doubt." *People v Carines*, 460 Mich 750, 774; 597 NW2d 130 (1999).

Defendant cites *Anderson* and *Kachar* for the proposition that when a defendant is in custody at the time of a photographic array, he has the right to counsel. However, *Hickman,* in a case involving a corporeal lineup, modified this rule, holding that the right to an attorney attaches at "the initiation of adversarial criminal proceedings," and suggested adversarial proceedings begin with a "formal charge, preliminary hearing, indictment, information, or arraignment." *Hickman,* 470 Mich at 602, 606 (quotation marks and citation omitted). In reaching this conclusion, the Court found that there is no reason not to follow the United States Supreme Court's interpretation of the right to counsel under the Sixth Amendment. *Hickman*, 470 Mich at 608-609. Because defendant had not yet been charged in this case, the right to counsel had not yet attached. Moreover, given the *Hickman* Court's decision to follow federal law on this issue, we presumably should also follow the decision in *United States v Ash*, 413 US 300, 312; 93 S Ct 2568; 37 L Ed 2d 619 (1973), that the Sixth Amendment does not guarantee a right to counsel at photo arrays.

Affirmed.

/s/ David H. Sawyer
/s/ Kirsten Frank Kelly
/s/ Karen M. Fort Hood