# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

HYO SANG ROGERS,

Defendant-Appellant.

UNPUBLISHED
August 18, 2016

No. 326055
Wayne Circuit Court
LC No. 14-007118-FC

Before: MURPHY, P.J., and STEPHENS and BOONSTRA, JJ.

PER CURIAM.

A jury convicted defendant of two counts of armed robbery, MCL 750.529, two counts of felonious assault, MCL 750.82, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant to concurrent prison terms of 12 to 25 years for each robbery conviction, and one to four years for each assault conviction, to be served consecutive to a two-year term of imprisonment for the felony-firearm conviction. Defendant appeals as of right. We affirm.

Defendant was convicted of robbing Adil and Subhi Jarbo, owners of Montroy's Market in Van Buren Township, and assaulting customers Shawana Bryant and Derrick Hamilton-Whitsett on July 11, 2014. The prosecution presented evidence that an Asian man, whom witnesses identified as defendant, and a black man, identified as Devon Mayes, entered the store and repeatedly brought items to the counter, but then took them back. Defendant ultimately requested an expensive bottle of liquor and a carton of cigarettes from behind the counter, along with two containers of juice. As Adil rang up the items, defendant produced a black handgun and announced a robbery. Shortly thereafter, Bryant entered the store and defendant pointed his gun at her head and threatened to shoot her if she answered her ringing cell phone. Minutes later, Hamilton-Whitsett, who had been waiting in the car for Bryant, came inside the store. Defendant grabbed Hamilton-Whitsett as he tried to leave, pulled him into the store, and threatened to shoot him if he moved. In the meantime, Mayes had jumped behind the counter, Adil opened the two cash registers as instructed, and Mayes took the money. Defendant directed Mayes to also take the liquor, juice, and cigarettes. As the men left the store, defendant threatened to shoot anyone if they moved. Within minutes, the police arrived and the Jarbos

-1-

gave them the license plate number of the robbers' vehicle.[1]  After learning that the vehicle, a Ford Expedition, was registered to Mayes, and that defendant was a known associate of Mayes, the police conducted separate photographic lineups with each complainant.  Adil, Bryant, and Hamilton-Whitsett all immediately identified defendant as the gunman, and all were certain of their identifications.[2]  The police subsequently arrested defendant and Mayes, who were together in a different vehicle.  Defendant had $359 and a handgun in his possession; the complainants described the gun as being the same or similar to the gun that defendant used during the robbery.  The Jarbos also recognized a market juice container found in Mayes's SUV, which was identified as the vehicle used in the robbery.  The defense theory at trial was that defendant was misidentified as one of the robbers.

## I.  SUGGESTIVE PRETRIAL IDENTIFICATION

Defendant argues that the complainants' in-court identifications of defendant were tainted because the pretrial photographic lineup that the witnesses viewed was impermissibly suggestive.  Defendant asserts that his photo "stood out" because it was the brightest.  Defendant raised this argument below in a pretrial motion, requesting that the trial court suppress the identification testimony or, in the alternative, hold a *Wade*[3] hearing, which the trial court denied.  "The trial court's decision to admit identification evidence will not be reversed unless it is clearly erroneous."  *People v Harris*, 261 Mich App 44, 51; 680 NW2d 17 (2004).  "Clear error exists if the reviewing court is left with a definite and firm conviction that a mistake has been made."  *Id.*  "Issues of law relevant to a motion to suppress [identification evidence] are reviewed de novo."  *People v McDade*, 301 Mich App 343, 356; 836 NW2d 266 (2013).

Photographic identification procedures can violate a defendant's due process rights if they are so impermissibly suggestive as to give rise to a substantial likelihood of misidentification.  *People v Gray*, 457 Mich 107, 111; 577 NW2d 92 (1998).  A lineup may be unduly suggestive if a witness is shown a group of people but the defendant is singled out in some fashion.  *Id.*  A photographic array is not deemed to be suggestive if "it contains some photographs that are fairly representative of the defendant's physical features and thus sufficient to reasonably test the identification."  *People v Kurylczyk*, 443 Mich 289, 304; 505 NW2d 528 (1993) (quotations marks omitted).  Mere differences in the composition of photographs, in the physical characteristics of the individuals photographed, or in the clothing worn do not render a lineup impermissibly suggestive, unless they substantially distinguish the defendant from other lineup participants.  *Id.* at 304-305, 312.  Such differences relate only to the weight of the identification and not to its admissibility.  *People v Hornsby*, 251 Mich App 462, 466; 650 NW2d 700 (2002).

---

[1] After defendant requested a $210 bottle of liquor, Adil had directed Subhi to go outside and write down the license plate number of the men's truck, which was parked behind the store.

[2] Hamilton-Whitsett also identified Mayes from a different photographic array.

[3] *United States v Wade*, 388 US 218; 87 S Ct 1926; 18 L Ed 2d 1149 (1967).

We agree with the trial court's conclusion that the six-person photographic lineup is not unduly suggestive or improper. There is nothing about the lighting of the participants' photos that renders defendant's photo, in position number five, substantially distinguishable. Although defendant's photo is brightly lit on one side of his face, participant number two is the most brightly lit overall, and the faces of participant numbers three and four are arguably more luminous than defendant's face. In contrast, participant numbers one and six are the dimmest lit. Thus, defendant has neither the singular lightest nor the dimmest photo in the six-person array. The mere differences in the compositions of the photographs do not render the lineup impermissibly suggestive. Defendant has not shown that the lighting of his photograph rendered it so impermissibly suggestive that it gave rise to a substantial likelihood of misidentification. *Gray*, 457 Mich at 111.

Furthermore, our review of the photographic array reveals that the other individuals depicted in the photographs are fairly representative of defendant's physical features. The photographic lineup contains six colored photographs of similarly-looking, similarly-aged Asian males. At trial, defendant argued that his hair is shorter than the other participants and that he is the only participant who has a mark on the side of his nose, but "slight physical differences or variations" between a defendant and the other lineup participants do not "result in a substantial likelihood of misidentification." *McDade*, 301 Mich App at 358. Rather, those types of minor physical differences in the participants relate to the weight of a complainant's identification, not its admissibility. *Hornsby*, 251 Mich App at 466. We note that defense counsel appropriately explored the differences during his cross-examination of Bryant, Hamilton-Whitsett, Adil, and the officers who prepared and conducted the photographic lineup. The lineup was made available to the jury, which therefore had the opportunity to view the physical differences between defendant and the other participants to determine if those differences undermined the complainants' identifications of defendant as one of the robbers.

In sum, the trial court did not clearly err in rejecting defendant's claim that the pretrial identification procedures were unduly suggestive. Because the lineup procedures were not unduly suggestive, it was not necessary to determine if an independent basis existed for the identifications.[4] *People v Barclay*, 208 Mich App 670, 675; 528 NW2d 842 (1995).

---

[4] We briefly note defendant's unpreserved contention, presented without proper analysis, that Subhi's belated identification of defendant at trial was based on an impermissibly suggestive pretrial procedure. Subhi did not identify anyone in the photographic lineup. He explained at trial that he was "shaken" and too nervous to recognize anyone. Again, there is no record evidence of any pretrial identification procedure that was unduly suggestive. The jury was aware that Subhi did not identify defendant in the photographic array or at the preliminary examination. Defense counsel explored these matters at trial. Subhi's failure to identify defendant before trial did not preclude his in-court identification testimony; it was only a factor for the jury to consider in evaluating the reliability and credibility of the in-court identification. See *People v Davis*, 241 Mich App 697, 700; 617 NW2d 381 (2000).

## II. PROSECUTOR'S CONDUCT

Defendant next argues that the prosecutor's conduct denied him a fair trial. Because defendant did not object to the prosecutor's conduct at trial, this issue is unpreserved and our review is limited to plain error affecting defendant's substantial rights. *People v Roscoe*, 303 Mich App 633, 648; 846 NW2d 402 (2014). This Court will not reverse if the alleged prejudicial effect of the prosecutor's conduct could have been cured by a timely instruction upon request. *People v Watson*, 245 Mich App 572, 586; 629 NW2d 411 (2001).

### A. MISLEADING THE JURY

Defendant contends that the prosecutor mischaracterized the evidence and misled the jury when he argued that "all four witnesses gave the same description of the robbers." Defendant correctly observes that a prosecutor may not argue facts not in evidence or mischaracterize the evidence presented. *Watson*, 245 Mich App at 588. The prosecutor did not state, however, that all four eyewitnesses gave the same description of the robbers. Rather, the prosecutor stated:

> Now, after [defendant] and Devon Mayes leave, they call the police. And Officer Barry from the Van Buren Township Police Department shows up. They give him a description, they meaning the four people that were there. They say he was a tall, five foot eleven Asian man, skinny face, who also came in with a younger looking black male, they robbed the store, the Asian guy had the gun, and then they also gave him the license plate.

Viewed in context, the prosecutor's use of the term "they" was not intended to mislead the jury regarding defendant's identity. Rather, the prosecutor was in the midst of providing a narrative of the events that led the police to the defendants, based on the totality of the information that the eyewitnesses had provided to the police. This is supported by the fact that the testimony was clear that Subhi was the witness who obtained the license plate number of the robbers' vehicle, yet the prosecutor stated "*they* also gave the license plate." (Emphasis added.) Furthermore, subsequent to providing this narrative, the prosecutor specifically discussed the evidence supporting defendant's identity, relying on the evidence that three of the four eyewitnesses selected defendant from a photo lineup, that defendant possessed a gun and hundreds of dollars when he was arrested, and that a juice container from the market was found in Mayes's vehicle that had been linked to the robbery. The prosecutor's conduct was not improper.

Further, a timely objection to the challenged remark could have cured any perceived prejudice by way of an appropriate cautionary instruction. See *Watson*, 245 Mich App at 586. Indeed, even without an objection, the trial court instructed the jury that the lawyers' statements and arguments are not evidence, that the jury was to decide the case based only on the properly admitted evidence, and that the jury was to follow the court's instructions. These instructions were sufficient to dispel any possible prejudice and protect defendant's substantial rights. *People v Long*, 246 Mich App 582, 588; 633 NW2d 843 (2001). Juries are presumed to follow their instructions. *People v Breidenbach*, 489 Mich 1, 13; 798 NW2d 738 (2011).

## B. VOUCHING FOR WITNESSES

Defendant argues that the prosecutor improperly vouched for the credibility of the prosecution's witnesses during closing argument. A prosecutor may not vouch for the credibility of a witness by conveying that he has some special knowledge that the witness is testifying truthfully. *People v Knapp*, 244 Mich App 361, 382; 624 NW2d 227 (2001). However, prosecutors have great latitude when arguing at trial, *People v Fyda*, 288 Mich App 446, 461; 793 NW2d 712 (2010), and may argue from the facts in evidence that a witness is worthy of belief, *People v Cain*, 299 Mich App 27, 36; 829 NW2d 37 (2012), vacated in part on other grounds 495 Mich 874 (2013). In this case, the prosecutor did not suggest that he had some special knowledge that the witnesses were credible. The prosecutor's argument was that, objectively, the eyewitnesses had no motive to fabricate a story to implicate defendant in a crime. The prosecutor observed that Bryant and Hamilton-Whitsett did not know the Jarbos and emphasized that the four witnesses' independent recitations of the events were consistent. Further, as in the *Cain* case, defense counsel argued that the prosecution witnesses were not credible and the prosecutor permissibly responded that those witnesses had no motive to lie. See *id.* at 37. The prosecutor's argument was responsive to the evidence and the theories presented at trial and, viewed in context, was not improper. In addition, the trial court instructed the jurors that they were the sole judges of witness credibility, which protected defendant's substantial rights. *Breidenbach*, 489 Mich at 13; *Long*, 246 Mich App at 588. Consequently, this unpreserved claim does not warrant appellate relief.

## C. ARGUING FACTS NOT IN EVIDENCE

Defendant argues that the prosecutor argued facts not in evidence when he described the robbery as "torture" during closing and rebuttal arguments. Defendant asserts that there was "no evidence of torture, or any physical contact, except that one of the perpetrators pulled [Hamilton-Whitsett] in the store when he tried to walk out." However, "prosecutors may use 'hard language' when it is supported by evidence and are not required to phrase arguments in the blandest of all possible terms." *People v Ullah*, 216 Mich App 669, 678-679; 550 NW2d 568 (1996). The evidence that defendant pointed a semi-automatic gun in Bryant's face while threatening to blow her head off, pointed his firearm at Hamilton-Whitsett and threatened to "blow his F'g brains out," and threatened to blow everyone's head off as he left, considered together, supports the prosecutor's characterization of these acts as "torture." Moreover, even if the prosecutor's description could be considered improper, the trial court protected defendant's substantial rights by instructing the jury that the lawyers' statements and arguments are not evidence. *Long*, 246 Mich App at 588.

## D. IMPROPER OBJECTION

Defendant also argues that the prosecutor engaged in misconduct by objecting when defense counsel questioned a witness about the suggestiveness of the photo lineup, after having agreed at a pretrial motion hearing that defense counsel was not precluded from arguing suggestiveness to the jury. In his objection at trial, however, the prosecutor pointed out that he only agreed that defense counsel could argue the issue of suggestiveness to the jury; he did not agree that counsel could question the witnesses about suggestiveness. However, regardless of the scope of the prosecutor's agreement before trial, the trial court overruled the prosecutor's

objection and allowed defense counsel to question the witnesses at length about the composition of the photo lineup. Therefore, defendant was not prejudiced by the prosecutor's objection.

## III. EFFECTIVE ASSISTANCE OF COUNSEL

Lastly, defendant argues that defense counsel was ineffective for failing to object to the prosecutor's improper vouching and misstatement of the evidence during closing argument, and for failing to further challenge the complainants' identifications of him as one of the robbers. Because defendant did not raise an ineffective assistance of counsel claim in the trial court, our review of this issue is limited to mistakes apparent on the record. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). "To demonstrate ineffective assistance of counsel, a defendant must show that his or her attorney's performance fell below an objective standard of reasonableness under prevailing professional norms and that this performance caused him or her prejudice." *People v Nix*, 301 Mich App 195, 207; 836 NW2d 224 (2013) (citation omitted). "To demonstrate prejudice, a defendant must show the probability that, but for counsel's errors, the result of the proceedings would have been different." *Id*.

## A. PROSECUTOR'S CONDUCT

As discussed in section II, *supra*, the prosecutor's remarks were not improper. Therefore, defense counsel's failure to object was not objectively unreasonable. Further, the trial court's jury instructions were sufficient to dispel any possible prejudice. Therefore, defendant cannot demonstrate a reasonable probability that, but for counsel's failure to object, the result of the proceeding would have been different.

## B. IDENTIFICATION TESTIMONY

There is no merit to defendant's claim that defense counsel was ineffective for failing to object to the in-court identifications based on an impermissibly suggestive photo lineup. Defendant acknowledges that defense counsel moved to suppress the in-court identifications on this basis. As discussed in section I, *supra*, the trial court did not clearly err in rejecting defendant's claim that the pretrial identification procedures were unduly suggestive. Therefore, defense counsel's failure to object at trial was not objectively unreasonable. *Nix*, 301 Mich App at 207. Counsel was not required to make a futile objection. *People v Snider*, 239 Mich App 393, 425; 608 NW2d 502 (2000).

With regard to Adil, defendant argues that defense counsel should have moved to suppress his in-court identification on the additional ground that he failed to identify defendant at the preliminary examination. At trial, Adil explained his reasons for failing to identify defendant, including the fact that defendant covered his face. Adil further testified that, when he was leaving the courtroom after his testimony, he was closer to defendant and recognized him as the perpetrator. The fact that Adil selected defendant as the perpetrator from a photo lineup, did not identify him at the preliminary examination because he could not clearly see his face, and then identified him at trial does not render the in-court identification inadmissible, as defendant suggests. Rather, Adil's failure to identify defendant at the preliminary examination only raised a credibility issue for the trier of fact to resolve at trial. *People v Davis*, 241 Mich App 697, 700;

617 NW2d 381 (2000). Consequently, defense counsel's failure to move to suppress Adil's identification on this basis was not objectively unreasonable. *Nix*, 301 Mich App at 207.

Defendant further argues that defense counsel should have moved to suppress Bryant's and Hamilton-Whitsett's identifications because they viewed the photo lineup at the same time and place, and presumably could have influenced each other's decision. However, the record does not support this assertion. Rather, the officer who conducted the photo lineups testified that the witnesses viewed the arrays independently, while in separate rooms. Bryant and Hamilton-Whitsett both testified that they were apart and not shown the photo lineup together, and could not hear or see anything that was happening while the other was viewing the lineup. Because the record does not reveal that the photo identification procedures were conducted in the joint presence of both witnesses, defense counsel's failure to move to suppress the identifications on this ground was not objectively unreasonable. *Snider*, 239 Mich App at 425. Consequently, defendant cannot establish a claim of ineffective assistance of counsel.

Affirmed.

/s/ William B. Murphy
/s/ Cynthia Diane Stephens
/s/ Mark T. Boonstra