*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

JAMELE ANDRE ATKINS,

      Defendant-Appellant.

UNPUBLISHED
August 13, 2020

No. 347631
Oakland Circuit Court
LC No. 2018-269228-FC

Before: RONAYNE KRAUSE, P.J., and SAWYER and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals by right his jury-trial convictions of three counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b (person under 13, defendant 17 years of age or older). The trial court sentenced defendant as a third-offense habitual offender, MCL 769.13, to concurrent prison terms of 30 years to 60 years for each of his convictions. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Defendant was accused of sexually assaulting NM and ML[1] at their shared home between July 2016 and October 2017. NM was nine years old and ML was five years old at the time the sexual assaults occurred. The victims' household included the victims' mother and father, Dolores and José Ovalle-Ruiz (Dolores and José), three other siblings, defendant, and defendant's mother, Glenda Thomas (Glenda). Glenda was the victims' nanny and resided in the home from July 2016 through October 2017; defendant worked with the victims' father and also resided in the home from July 2016 through October 2017.

NM testified that defendant sexually assaulted her on two occasions. On the first occasion, defendant placed NM on the couch in a bedroom, pulled down her pants and underwear, and placed his tongue on NM's vaginal area.[2] On the second occasion, NM came downstairs to play with

---

[1] We also refer to NM and ML jointly as "the victims."

[2] NM referred to this area as the "front private part."

-1-

defendant's cellular telephone. NM was sitting on defendant's bed when defendant removed NM's clothing and pulled down his pants. While defendant was behind NM, defendant touched NM's "behind" with his genitals. Defendant also placed his tongue on NM's vaginal area.

In addition, NM testified that she had observed defendant touch ML's private parts while ML was on a couch in a bedroom. NM testified that defendant pulled down ML's pants and licked ML's vaginal area. ML testified that defendant touched her "right in the private" with his hand, over her clothes, while she was lying on the couch in the bedroom. When defendant sexually assaulted ML, defendant and ML were playing a "mail delivery" game.

Initially, NM was afraid to tell anyone about defendant's sexual assaults because she thought that she and ML would get into trouble. Eventually, after defendant was no longer living in the same household, NM disclosed these assaults to Dolores. Dolores telephoned the police, took NM and ML to Care House,[3] and had a conversation with Detective Renee Stevens of the Oakland County Sheriff's Department. Dolores also sought psychiatric and therapeutic treatment for NM and ML.

Detective Stevens testified that, as the officer-in-charge, she interviewed defendant on two occasions. In his first interview, defendant denied that he had touched NM or ML in a sexual manner. However, in his second interview defendant confessed to having sexually assaulted NM and ML.

During trial, defendant testified and denied that he had touched NM or ML in a sexual manner. In response to his counsel's questioning, defendant testified that he had confessed to the sexual assaults to bring to light Dolores's alleged history of making false allegations or to protect other men from being wrongfully accused of these crimes.[4] But on cross-examination, defendant claimed that he told Detective Stevens he had sexually assaulted NM and ML because he was upset that his parole officer had did not given him permission to attend his father's funeral.

The jury convicted defendant as described. At sentencing, the trial court assessed 10 points for offense variable (OV) 4 (psychological injury to the victim) and OV 10 (exploitation of a vulnerable victim). Defendant was sentenced as described. After filing his claim of appeal, defendant moved this Court to remand to the trial court for resentencing or for a *Ginther*[5] hearing regarding his counsel's alleged ineffectiveness at sentencing. This Court denied the motion

---

[3] Care House is an independent child advocacy organization that specializes in forensic interviews.

[4] Defendant stated, "I want to be charged with it because in the past I have been aware of [Dolores] claiming that somebody did something like this and it never got to the point where they can be free. The gentleman we worked with, man's name is Russ. He had been charged for this. I took it upon myself to take it. I'm already incarcerated, so that's running it."

[5] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

"without prejudice to a case call panel of this Court determining that remand is necessary once the case is submitted on a session calendar."[6]

## II. OV 4

Defendant argues that the trial court should have assessed zero points for OV 4. In the alternative, defendant argues that his counsel was ineffective for failing to object to the trial court's assessment of 10 points. We disagree in both respects.

"The proper interpretation and application of statutes and court rules is a question of law, which this Court reviews de novo." *People v Comer*, 500 Mich 278, 287; 901 NW2d 553 (2017) (citation omitted). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *People v Rodriguez*, 327 Mich App 573, 576; 935 NW2d 51 (2019), citing *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). We review for clear error whether the trial court's factual determinations are supported by a preponderance of the evidence. *Id*. "Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake has been made." *People v Chaney*, 327 Mich App 586, 587 n 1; 935 NW2d 66 (2019), citing *People v Anderson*, 284 Mich App 11, 13; 772 NW2d 792 (2009).[7]

"Generally, an ineffective assistance of counsel claim presents a mixed question of fact and constitutional law." *People v Hoang*, 328 Mich App 45, 63; 935 NW2d 396 (2019) (citation omitted). "Constitutional questions are reviewed de novo[.]" *Id*. "[F]indings of fact are reviewed for clear error." *Id*. Because no *Ginther* hearing was held, our review is limited to errors apparent on the existing record. *Id*. However, in considering whether to remand for a *Ginther* hearing, we may consider affidavits and supporting exhibits presented by a defendant as offers of proof, even if those affidavits and exhibits are not part of the record. See *People v Moore*, 493 Mich. 933, 933, 825 N.W.2d 580 (2013); see also MCR 7.216(A)(4).

"When calculating the sentencing guidelines, a sentencing court may consider all record evidence, including the contents of a PSIR [presentence investigation report], plea admissions, and testimony presented at a preliminary examination." *People v McFarlane*, 325 Mich App 507, 532;

---

[6] *People v Atkins*, unpublished order of the Court of Appeals, entered November 14, 2019 (Docket No. 347631)

[7] During defendant's sentencing hearing, defense counsel objected to the trial court's assessment of 10 points for OV 9, but made no objection to the scores for OV 4 or OV 10. Defendant's minimum sentencing guidelines range of 171 months to 427 months includes the trial court's assessment of 10 points for OVs 4 and 10. Therefore, defendant waived appellate review of the scoring of OVs 4 and 10. See *People v Biddles*, 316 Mich App 148, 166; 896 NW2d 461 (2016), citing *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000). However, because defendant's claim of ineffective assistance of counsel is premised on the argument that the trial court's assessment of points was erroneous and that the error would have been corrected had counsel objected, we will review the trial court's assessments to determine whether an error was made.

-3-

926 NW2d 339 (2018) (citation omitted). "It may also consider a victim impact statement in a PSIR or other statement or letter submitted to the court for consideration on sentencing." *Id*. "The trial court may rely on reasonable inferences arising from the record evidence to sustain the scoring of an offense variable." *People v Earl*, 297 Mich App 104, 109; 822 NW2d 271 (2012).

"Under the statutory sentencing guidelines, the trial court must score the applicable offense and prior record variables to determine the appropriate range for the minimum sentence." *People v Kimble*, 470 Mich 305, 309; 684 NW2d 669 (2004). "A sentencing court has discretion in determining the number of points to be scored, provided that evidence of record adequately supports a particular score." *People v Hornsby*, 251 Mich App 462, 468; 650 NW2d 700 (2002) (citations omitted). While a court must score and consider the sentencing guidelines, the guidelines are now advisory, *People v Lockridge*, 498 Mich 358, 365; 870 NW2d 502 (2015), but " 'remain a highly relevant consideration in a trial court's exercise of [its] sentencing discretion.' " *People v Odom*, 327 Mich App 297, 314-315; 933 NW2d 719 (2019), quoting *Lockridge*, 498 Mich at 391. "Scoring decisions for which there is any evidence in support will be upheld." *Hornsby*, 251 Mich App at 468 (citation omitted).

OV 4 concerns psychological injury to a victim. MCL 777.34(1). The assessment of 10 points for OV 4 is warranted when "[s]erious psychological injury requiring professional treatment occurred to a victim." MCL 777.34(1)(a). "While actual treatment is not required for scoring OV 4, evidence that a victim sought counseling may be considered." *People v Lampe*, 327 Mich App 104, 114; 933 NW2d 314 (2019) (citation omitted). When determining whether to score 10 points under OV 4, "the fact that treatment has not been sought is not conclusive." MCL 777.34(2). This Court has held that "OV 4 may properly be scored at 10 points even absent proof that a victim sought or received, or intended to seek or receive, professional treatment." *People v Calloway*, 500 Mich 180, 188; 895 NW2d 165 (2017) (citations omitted). However, the assessment of 10 points must not be based merely on the general belief that "people typically suffer psychological injury when they are victims of the type of crime in question; and while relevant, a victim's fear during the crime does not by itself justify the scoring of OV 4." *Lampe*, 327 Mich App at 114. The trial court may assess 10 points for OV 4 "if the victim suffers, among other possible psychological effects, personality changes, anger, fright, or feelings of being hurt, unsafe, or violated." *People v Armstrong*, 305 Mich App 230, 247; 851 NW2d 856 (2014). A victim's statements about feeling "angry, hurt, violated, and frightened" after the offense are relevant to this determination. *People v Williams*, 298 Mich App 121, 124; 825 NW2d 671 (2012) (citation omitted).

Defendant asserts that, although Dolores testified at trial that she had sought psychiatric counseling and treatment for NM and ML, she did not provide proof of that assertion, and that the trial court's assessment of 10 points is therefore not supported by the evidence. We disagree. Apart from the fact that Dolores's testimony was itself record evidence that the trial court could consider, *McFarlane*, 325 Mich App at 532, the trial court was not required to find that the victims were actually receiving mental health treatment, *Calloway*, 500 Mich at 188. Moreover, the victim impact statement contained in defendant's PSIR states that the victims had trouble sleeping and were receiving therapy because of his sexual assaults. The record supports the conclusion that, as a result of defendant's assaults, NM and ML suffered severe psychological injury requiring professional treatment. Consequently, a preponderance of the evidence supports the trial court's assessment of 10 points for OV 4. *Rodriguez*, 327 Mich App at 576. Because there was no error,

any objection made by defense counsel would have been futile. See *People v Thomas*, 260 Mich App 450, 457; 678 NW2d 631 (2004). Counsel is not required to raise futile objections. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

### III. OV 10

Defendant also argues that the trial court should have assessed zero points for OV 10. We disagree.

"Points are assessed under OV 10 for 'exploitation of a vulnerable victim.'" *People v Cannon*, 481 Mich 152, 159; 749 NW2d 257 (2008), quoting MCL 777.40(1). The assessment of 10 points for OV 10 is warranted when "[t]he offender exploited a victim's physical disability, mental disability, youth or agedness, or a domestic relationship, or the offender abused his or her authority status." MCL 777.40(1)(b).

> Factors to be considered in deciding whether a victim was vulnerable include (1) the victim's physical disability, (2) the victim's mental disability, (3) the victim's youth or agedness, (4) the existence of a domestic relationship, (5) whether the offender abused his or her authority status, (6) whether the offender exploited a victim by his or her difference in size or strength or both, (7) whether the victim was intoxicated or under the influence of drugs, or (8) whether the victim was asleep or unconscious." [*Cannon*, 481 Mich at 158-159 (citations and footnotes omitted).]

Defendant argues that there was no evidence that he exploited the victims' youth. We disagree. When defendant sexually assaulted NM and ML, NM was nine years old, ML was four years old, and defendant was approximately 30 or 31 years old. This Court has upheld a trial court's assessment of 10 points for OV 10 in circumstances of much smaller age differences. See, e.g., *People v Johnson*, 474 Mich 96, 103; 712 NW2d 703 (2006) ("Where complainant was fifteen years old and defendant was twenty, the court could determine that defendant exploited the victim's youth in committing the sexual assault.") (citation omitted).

In addition, NM reported during a forensic interview that she had observed defendant playing a "mail delivery game" with ML at the time he assaulted her; ML testified similarly. During defendant's police interview, he admitted to sexually assaulting NM when she came to play with his cellular telephone. The record supports the conclusion that, in sexually assaulting the victims, defendant exploited their youthful interest in games, which supported the trial court's assessment of 10 points for OV 10. *Earl*, 297 Mich App at 109.

Moreover, the record also demonstrates that the victims were vulnerable to defendant physically because of their youth. "MCL 777.40(3)(c) defines 'vulnerability' as the 'readily apparent susceptibility of a victim to injury, physical restraint, persuasion, or temptation,' and such vulnerability may or may not arise from the explicitly listed characteristics, relationships, and circumstances set forth in subdivisions (b) and (c)." *People v Huston*, 489 Mich 451, 466; 802 NW2d 261 (2011). In this case, defendant placed ML on her back and removed her clothing when he sexually assaulted her. Similarly, defendant removed NM's clothing during his sexual assaults. Further, NM testified she told defendant to stop on both occasions, but that defendant did not

immediately stop. A reasonable inference can be made that the victims' youth and corresponding small stature increased their vulnerability to defendant's exercise of physical control over them. MCL 777.40(3)(c); *Earl*, 297 Mich App at 109.

In addition, the victims' youth increased their vulnerability to defendant's persuasion. The record shows that defendants' threats deterred the victims from immediately reporting the sexual assaults. Defendant told NM that her father would die, and that he would kidnap her, take her to a place where the police would be unable to find her, call Childrens Protective Services (CPS), and have her siblings taken away, if she told anyone about his sexual assaults. NM did not tell Dolores about defendant's sexual assaults until NM was told that defendant was incarcerated. During trial, NM continued to express fear of defendant, and that she was afraid to tell anyone about defendant's sexual assaults, because of her belief that she and ML would get into trouble. The record supports the conclusion that the victims' youthful tendency to believe adults and their lack of knowledge about the workings of governmental agencies like CPS increased their vulnerability to defendant's persuasion, justifying the assessment of 10 points for OV 10.[8] *Earl*, 297 Mich App at 109.

The trial court's assessment of 10 points for OV 10 was further supported by defendant's exploitation of his domestic relationship with the victims. The record reflects that defendant resided with the victims and that he took advantage of that fact to sexually assault them when he was left alone with them. *People v Jamison*, 292 Mich App 440, 447; 807 NW2d 427 (2011) ("[T]o qualify as a 'domestic relationship,' there must be a familial or cohabitating relationship.").[9]

The trial court did not err by assessing defendant 10 points for OV 10. And because there was no error, any objection made by defense counsel would have been futile. See *Thomas*, 260 Mich App at 457. Again, counsel is not required to raise futile objections. *Ericksen*, 288 Mich App at 201.

## IV. PROPORTIONALITY

Defendant also argues that he is entitled to resentencing because his sentences, although within the recommended guidelines range, were disproportionate. We disagree.

---

[8] Defendant fails to cite any caselaw supporting his assertion that, in order to assess 10 points for OV 10, the trial court was required to find that he had manipulated the victims with alcohol, other substances, or bribes. An appellant may not simply "announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *People v Bowling*, 299 Mich App 552, 559-560; 830 NW2d 800 (2013), quoting *People v Kevorkian*, 248 Mich App 373, 389; 639 NW2d 291 (2001).

[9] Defendant also argues that he did not engage in any predatory preoffense conduct toward the victims. Because the trial court did not assess points for predatory conduct, see MCL 777.40(1)(a), defendant's argument is irrelevant.

Defendant's recommended minimum sentencing guidelines range, as a third-offense habitual offender, MCL 769.13, was between 171 months and 427 months for each CSC-I conviction. Defendant concedes that his sentences were within this range. When a sentence falls within the guidelines range, this Court must affirm the trial court's sentence "unless there was an error in scoring or the trial court relied on inaccurate information" when sentencing. *Schrauben*, 314 Mich App at 196, citing MCL 769.34(10) and *People v Francisco*, 474 Mich 82, 88-89; 711 NW2d 44 (2006). "When a trial court sentences a defendant in reliance upon an inaccurate guidelines range, it does so in reliance upon inaccurate information." *Francisco*, at 91 n 7. "Where a scoring error does not alter the appropriate guidelines range, resentencing is not required." *Id*. at 91 n 8.

As discussed, the trial court did not err in its assessment of 10 points for OVs 4 and 10. Therefore, defendant has failed to establish that the trial court relied on inaccurate information in determining his sentences. *Francisco*, 474 Mich at 91 n 7. Because defendant has failed to overcome the presumption that his sentences were proportional, he is not entitled to resentencing. *Schrauben*, 314 Mich App at 196 n 1, citing MCL 769.34(10). Further, to the extent defendant argues that the trial court was required to consider, as mitigating factors, the fact that these were defendant's first CSC convictions, or defendant's employment history, we disagree. The trial court was not required to consider these mitigating factors when it imposed defendant's sentence. See *People v Johnson*, 309 Mich App 22, 34-35; 866 NW2d 883 (2015) ("Defendant next argues that the trial court failed to consider various mitigating factors, such as his mental health and substance abuse histories, his family support, and his remorse. However, as defendant readily acknowledges, the trial court was not required to consider such mitigating factors when it sentenced him.") (citation omitted); *People v Osby*, 291 Mich App 412, 416; 804 NW2d 903 (2011) ("While defendant maintains that under *Blakely*[10] the trial court is required to review all mitigating factors, we have already established that *Blakely* does not apply to sentencing in Michigan.") (citation omitted).

Affirmed.

/s/ Amy Ronayne Krause
/s/ David H. Sawyer
/s/ Mark T. Boonstra

---

[10] *Blakely v Washington*, 542 US 296; 124 S Ct 2531; 159 L Ed 2d 403 (2004).