# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

GALIEN ALEXANDER GLENN,

        Defendant-Appellant.

UNPUBLISHED
November 22, 2016

No. 327926
Berrien Circuit Court
LC No. 2014-004051-FC

Before: SAWYER, P.J., and MARKEY and O'BRIEN, JJ.

PER CURIAM.

Defendant, Galien Alexander Glenn, was convicted by a jury of two counts of assault with intent to rob while armed, MCL 750.89; one count of carrying a dangerous weapon with unlawful intent, MCL 750.226; and two counts of assault with a dangerous weapon (felonious assault), MCL 750.82. Defendant was sentenced to 12 to 40 years' imprisonment for each of his two assault with intent to rob while armed convictions, two to five years' imprisonment for his carrying a dangerous weapon with unlawful intent conviction, and two to four years' imprisonment for each of his two felonious-assault convictions, with the sentences to run concurrently. Defendant now appeals by right. We affirm.

First, defendant challenges the pretrial identification procedures at which he was identified by two of the victims in this case.

Defendant did not preserve this claim because he did not move to suppress the identification evidence in the trial court. *People v Davis*, 241 Mich App 697, 700; 617 NW2d 381 (2000). This Court reviews a trial court's ruling on the admissibility of identification evidence for clear error, *People v Hornsby*, 251 Mich App 462, 466; 650 NW2d 700 (2002), but we review de novo issues of constitutional law presented, *People v Hickman*, 470 Mich 602, 605; 684 NW2d 267 (2004). But unpreserved issues, including alleged constitutional errors, are reviewed for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). On plain-error review, the defendant has the burden to show (1) "error"; (2) that was "plain," meaning "clear or obvious"; (3) and that affected substantial rights or caused prejudice, meaning "that the error affected the outcome of the lower court proceedings." *Id.* at 763. Even if a defendant satisfies these requirements, an appellate court must exercise its discretion. "Reversal is warranted only when the plain, forfeited error resulted in the conviction

of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763 (citation and quotation marks omitted; alteration in original).

Defendant suggests that the on-the-scene identification procedure at which one of the victims, Michael Cunningham, identified him on the night of the incident was impermissibly suggestive in violation of his due process rights. We disagree.

"The fairness of an identification procedure is evaluated in light of the total circumstances to determine whether the procedure was so impermissibly suggestive that it led to a substantial likelihood of misidentification." *Hornsby*, 251 Mich App at 466. "When examining the totality of the circumstances, courts look at a variety of factors to determine the likelihood of misidentification." *People v Kurylczyk*, 443 Mich at 306 (opinion by GRIFFIN, J.), 505 NW2d 528 (1993).

These factors

> "include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." [*Id*., quoting *Neil v Biggers*, 409 US 188, 199-200; 93 S Ct 375; 34 L Ed 2d 401 (1972).]

Testimony involving an impermissibly suggestive pretrial identification procedure is not admissible at trial, but "in-court identification by the same witness still may be allowed if an independent basis for in-court identification can be established that is untainted by the suggestive pretrial procedure." *Kurylczyk*, 443 Mich at 303 (opinion by GRIFFIN, J.).

The police may conduct a prompt, on-the-scene identification because these procedures are "reasonable, indeed indispensable, police practices" that "permit the police to immediately decide whether there is a reasonable likelihood that the suspect is connected with the crime and subject to arrest, or merely an unfortunate victim of circumstance." *People v Libbett*, 251 Mich App 353, 361; 650 NW2d 407 (2002) (citation and quotation marks omitted). In *Libbett*, a carjacking victim gave a description of his two attackers to police officers who arrived at the scene approximately 10 or 15 minutes after the incident that occurred near midnight. *Id*. at 355-356. The victim described the suspects to the police who communicated description to other police officers by radio. *Id*. at 356. Another police officer observed a car that matched the victim's description at approximately 1:20 a.m. *Id*. After both a car chase and manhunt, the police eventually apprehended the four occupants of the car. *Id*. At 1:54 a.m., the police brought the victim to where the suspects were being held to see if he could identify any of the suspects as his attackers. *Id*. at 356-357, 361, 362. The victim identified the defendant and another individual as the two attackers who had assaulted him and taken his car. *Id*.

The *Libbett* Court found that the on-the-scene identification did not violate defendant's rights. *Id*. at 362, 363. The Court reasoned that the identification procedure "permitted the police to immediately decide whether there was a reasonable likelihood that the suspects who

had been in the car were connected with the crime and subject to arrest, or merely unfortunate victims of circumstance." *Id*. at 361-362. The Court emphasized that two of the four occupants of the car were likely innocent because the victim had reported that he was attacked by two people and that the on-the-scene identification allowed the police to distinguish between the actual perpetrators and other individuals who should be immediately released. *Id*. at 362. The Court also explained that one of the main benefits of prompt on-the-scene identifications is to obtain reliability in the apprehension of suspects. *Id*. The Court concluded that the two-hour interval between the crime and the on-the-scene identification was not unreasonable because it was conducted as promptly as possible and the attackers' appearance was still fresh in the victim's mind. *Id*. at 362-363. Moreover, there was no evidence that the police made any suggestive comments at the identification or acted for ulterior motives. *Id*. at 363.

In contrast, the Michigan Supreme Court found that a pretrial identification procedure was "highly suggestive" in *People v Gray*, 457 Mich 107, 114; 577 NW2d 92 (1998). In *Gray*, a police officer "went to the victim's residence, informed her that they had arrested the defendant, and showed her a single color photograph of the defendant," after which, the victim "became sure that defendant was the one who attacked her." *Id*. at 109-111. The Court concluded that "[t]he display of the single photograph, combined with the statement that this was the man the police had arrested for the assault, was highly suggestive," reasoning that "[t]he defendant was singled out by showing only one photo to the victim, and then the victim was reassured that defendant was her assailant because of the statement by a police officer that this was the man the police believed was her assailant." *Id*. at 111-112. Additionally, the police officer testified that he was attempting to calm the victim's anxieties and was not seeking to have her identify the defendant. *Id*. at 113. The Court found that although the police officer did not appear to have a "malicious" intent, "his subjective intent [did] not eliminate the possibility of a substantial likelihood of misidentification." *Id*. at 113-114.

In the present case, after Cunningham, Sonya Cooper, and John McCoy were attacked while walking home from a party store at night, Cunningham called 9-1-1. Sergeant Chris Takemoto was dispatched to the scene to investigate at approximately 10:00 p.m. and spoke to Cunningham. At some point, the police were informed that the attackers had been seen going into a particular house in the neighborhood. Sergeant Takemoto arrived at the house at approximately 10:45 p.m. Officer Michael Horton and other law enforcement officers were there as well. The officers knocked on the door and spoke to Cheree Mayfield, who lived at the house with her five children. Several other individuals, including defendant, also lived at the house. Mayfield let the officers enter and gave them permission to search the house. Officer Horton found defendant and three other individuals in an upstairs bedroom. Sergeant Takemoto then contacted Cunningham and asked him to come to the house to see if he could identify any of the individuals as his attackers. Both Cunningham and Sergeant Takemoto testified that Cunningham stood outside of the house as the officers brought each suspect onto the porch and that Cunningham identified defendant that night. Cunningham also identified defendant in court during trial as one of the men that he saw that night during the on-the-scene show up.

Prompt, on-the-scene identification procedures, such as what occurred in the instant case, are generally permissible. *Libbett*, 251 Mich App at 361. Furthermore, applying the factors outlined by the *Kurylczyk* Court does not lead us to the conclusion that the on-the-scene identification in this case was impermissibly suggestive.

First, regarding the opportunity of the witness to view the criminal at the time of the crime, Cunningham testified that during the assault, he could see his attackers' faces illuminated by the street light. Cunningham's testimony also showed that the incident lasted long enough for him to circle and move along with the group of people from the dark area of the street to the street light. Thus, Cunningham had a sufficient opportunity to view his attackers as the crime took place. See *Kurylczyk*, 443 Mich at 306 (opinion by GRIFFIN, J.).

Second, regarding the witness' degree of attention, Cunningham had the presence of mind to get the attackers to move out of the dark and under a streetlight where he could see them better by moving in a circle pattern toward the street light. He also took actions intentionally designed to prevent the attackers from getting into his pockets to rob him: he continued to circle rather than remaining still, and he sat down on the ground so the attackers could not reach into his pockets. These actions demonstrate Cunningham's high degree of attention during the incident. See *id*.

Third, regarding the accuracy of the witness' prior description of the criminal, Cunningham identified defendant on the night of the incident by stating that "he was the one with the carrot-top afro that had the dark handgun." Sergeant Takemoto testified that defendant had a carrot-top haircut, "like the comedian," that night and that defendant's haircut was "more like a carrot-top" that night than it was at trial. Detective Michael Clark testified that during the on-the-scene identification, defendant was brought to the door, Cunningham pointed out defendant, and Cunningham told Sergeant Takemoto some details about how defendant was involved in the robbery. While Cunningham testified that he saw more than one person that night with a carrot-top haircut, he also testified that he saw defendant's face during the incident, and Cunningham in fact identified defendant specifically as one of the attackers. Because there is no evidence in the record of a description of defendant given by Cunningham *before* the show-up, this factor does not affect the suggestiveness determination significantly one way or the other. See *id*.

Fourth, regarding the level of certainty demonstrated by the witness at the confrontation, we note that it appears from the testimony that Cunningham was certain about his identification. Cunningham, Sergeant Takemoto, and Detective Clark each testified simply that Cunningham identified defendant. There is no evidence that Cunningham was hesitant, indecisive, or in any way uncertain about this identification. See *id*.

Fifth, regarding the length of time between the crime and the confrontation, we again see there was testimony that Cunningham called 9-1-1 after the incident and that police arrived at approximately 10:00 p.m. Sergeant Takemoto arrived at 833 Edgecumbe at approximately 10:45 p.m., after which he called Cunningham and told him to come to 833 Edgecumbe for the show-up. Thus it appears that the on-the-scene identification was conducted within approximately one hour of the incident. As in *Libbett*, the on-the-scene identification in the instant case was conducted as promptly as possible and while the attackers' appearance was still fresh in Cunningham's mind. See *Libbett*, 251 Mich App at 362-363; see also See *Kurylczyk*, 443 Mich at 306 (opinion by GRIFFIN, J.).

Furthermore, there is no evidence that the police made any suggestive remarks to Cunningham or otherwise influenced his identification of defendant. See *Libbett*, 251 Mich App at 363. Defendant appears to mischaracterize the evidence by claiming that defendant was singled out; the evidence at trial showed that the suspects were shown to Cunningham one after the other, but there is no evidence that any one of these individuals was somehow made to appear more likely to have been involved in the incident than the rest of the individuals. It does not appear that Cunningham was "confronted with only a single individual" as defendant claims. Rather, Cunningham was confronted with multiple individuals, one after the other. In other words, the instant case did not involve circumstances of the type that were present in *Gray*. See *Gray*, 457 Mich at 111-112. There is also no evidence of any improper purpose or action on the part of law enforcement in relation to the on-the-scene identification in this case. While it was late at night and dark outside, there was testimony that the police used the porch light and a flashlight to allow Cunningham to see the suspects. Moreover, the fact that the attackers reportedly went into the house does not mean that every person found inside the house was involved in the assault. Thus, the prompt on-the-scene identification was reasonable and allowed the police to immediately decide whether there was probable cause to arrest the suspects for the crime or just victims of circumstance. *Libbett*, 251 Mich App 361. In light of the totality of circumstances, this on-the-scene identification procedure was not "so impermissibly suggestive that it led to a substantial likelihood of misidentification." *Hornsby*, 251 Mich App at 466.

To the extent that defendant challenges the evidence of Cooper's pretrial, out-of-court identification, we find this argument without merit. Defendant appears to argue that evidence of Cooper's identification of defendant during a corporeal line-up that occurred on January 28, 2015, should not have been admitted because "she was not one hundred percent sure of the identification and did not bother to tell police about the robbery until three months later after her own arrest." Defendant does not make any argument that the line-up procedure itself was impermissibly suggestive. Rather, defendant's claim is really directed at the *credibility* or *weight* of Cooper's identification testimony rather than its admissibility. "The credibility of identification testimony is a question for the trier of fact that we do not resolve anew." *Davis*, 241 Mich App at 700.

Because defendant failed to establish that the pretrial identification procedures were impermissibly suggestive, he was not entitled to a hearing to determine whether an independent basis for an in-court identification existed. See *Kurylczyk*, 443 Mich at 303 (opinion by GRIFFIN, J.); *People v Barclay*, 208 Mich App 670, 675; 528 NW2d 842 (1995). And, because the identification procedures were not impermissibly suggestive, defendant has failed to demonstrate that plain error occurred. *Carines*, 460 Mich at 763.

Defendant argues in the alternative that he was denied the effective assistance of counsel because defense counsel failed to object to the admission of the testimony regarding the out-of-court identification procedures and failed to have this evidence suppressed. Defendant did not move the trial court for a new trial or an evidentiary hearing, so our review is limited to the existing record. *People v Musser*, 259 Mich App 215, 220-221; 673 NW2d 800 (2003). "To establish a claim of ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that there is a reasonable probability that, but for the deficiency, the fact-finder would not have convicted the defendant." *Id*. at 221. As discussed above, the identification procedures in this case were not impermissibly suggestive. Thus, any objection

would not have been successful. "Counsel is not ineffective for failing to make a futile objection." *People v Thomas*, 260 Mich App 450, 457; 678 NW2d 631 (2004).

Next, defendant argues in his Standard 4 brief that the trial court incorrectly assessed 25 points for offense variable (OV) 13, MCL 777.43(1)(b), because the jury never found and defendant never admitted that he was involved in gang-related activity. We disagree.

Defendant did not object to the scoring of OV 13 in the trial court, nor did he raise this issue in a motion for resentencing or a motion to remand. Therefore, this issue is unpreserved. *People v Kimble*, 470 Mich 305, 311; 684 NW2d 669 (2004). Consequently, our review is limited to plain error affecting defendant's substantial rights. *People v Lockridge*, 498 Mich 358, 392, 394; 870 NW2d 502 (2015).

Issues that involve "the proper interpretation and application of the legislative sentencing guidelines, MCL 777.11 *et seq*. . . . are legal questions that this Court reviews de novo." *People v Morson*, 471 Mich 248, 255; 685 NW2d 203 (2004). On an appeal of a sentence under the guidelines, "the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id*.

The instructions for scoring OV 13 concerning "continuing pattern of criminal behavior" are found in MCL 777.43. A score of 25 points is proper where "[t]he offense was part of a pattern of felonious criminal activity directly related to causing, encouraging, recruiting, soliciting, or coercing membership in a gang or communicating a threat with intent to deter, punish, or retaliate against another for withdrawing from a gang[.]" MCL 777.43(1)(b). A score of 25 points is also proper where "[t]he offense was part of a pattern of felonious criminal activity involving 3 or more crimes against a person[.]" MCL 777.43(1)(c).

"The sentencing offense is the crime of which the defendant has been convicted and for which he or she is being sentenced." *People v McGraw*, 484 Mich 120, 122 n 3; 771 NW2d 655 (2009). For purposes of assessing points under OV 13, all crimes within a 5-year period that includes the sentencing offense "shall be counted regardless of whether the offense resulted in a conviction." MCL 777.43(2)(a); *People v Francisco*, 474 Mich 82, 86; 711 NW2d 44 (2006). The sentencing offense itself is counted. *People v Wilkens*, 267 Mich App 728, 743; 705 NW2d 728 (2005). "[M]ultiple concurrent offenses arising from the same incident are properly used in scoring OV 13." *People v Gibbs*, 299 Mich App 473, 488; 830 NW2d 821 (2013).

In this case, the presentence investigation report clearly indicates that defendant was assessed 25 points for OV 13 pursuant to MCL 777.43(1)(c), not because of gang-related activity under MCL 777.43(1)(b). Defendant was in fact convicted of four felonies arising out of the sentencing offenses: two counts of assault with intent to rob while armed, MCL 750.89, and two counts of felonious assault, MCL 750.82. All four felonies are classified as crimes against a person. MCL 777.16d. Thus, defendant's felonious acts "involve[d] 3 or more crimes against a person" committed within a five-year period of the sentencing offense, and 25 points were

properly assessed for OV 13. MCL 777.43(1)(c) & (2)(a); *Francisco*, 474 Mich at 86. Thus, the trial court did not err by assessing 25 points for OV 13 where defendant was convicted of

multiple crimes arising out of the same criminal act. *Gibbs*, 299 Mich App at 487-488 (finding that 25 points were properly assessed for OV 13 pursuant to MCL 777.43(1)(c) where the defendant's two armed robbery convictions and one unarmed robbery conviction all arose out of a single criminal episode).

Defendant's *Lockridge* claim concerning his OV 13 score is also without merit. In *Lockridge*, 498 Mich at 399, the Court held that the Sixth Amendment is violated when a defendant's mandatory minimum punishment is increased by "facts beyond those found by the jury or admitted by the defendant." Under *Lockridge*, a defendant who was sentenced on or before July 29, 2015, is entitled to a remand to the trial court for a determination of whether that court would have imposed the same sentence but for the mandatory nature of the guidelines if the defendant can make a threshold showing of plain error and was not subject to an upward departure. *Id*. at 397, 399. However, plain error does not exist in cases where "(1) facts admitted by the defendant and (2) facts found by the jury were sufficient to assess the minimum number of OV points necessary for the defendant's score to fall in the cell of the sentencing grid under which he or she was sentenced," because there is no prejudice to the defendant under these circumstances. *Id*. at 394-395. In such a case, "no further inquiry is required." *Id*.

As previously noted, defendant's OV 13 score was not based on judicial fact-finding that defendant's actions were related to a gang activity. Instead, defendant's OV 13 score was based on his four felony crimes against a person of which he was found guilty beyond a reasonable doubt by a jury. Defendant does not challenge his guidelines scoring on any other grounds. Thus, the "facts found by the jury were sufficient to assess the minimum number of OV points necessary for the defendant's score to fall in the cell of the sentencing grid under which he or she was sentenced," and "no further inquiry is required." *Lockridge*, 498 Mich at 394-395. Defendant has failed to make a threshold showing of plain error and is not entitled to any relief on this ground. *Id*. at 399.

Defendant also argues in his Standard 4 brief that he received ineffective assistance of counsel because defense counsel failed to object to the incorrect scoring of OV 13. This argument is clearly without merit. As previously discussed, the scoring of OV 13 was correctly scored without judicially found facts. Any objection would have been unsuccessful. "Counsel is not ineffective for failing to make [sic] a futile objection." *Thomas*, 260 Mich App at 457.

Finally, defendant also asks this Court, both through appellate counsel and in his Standard 4 brief, to remand to the trial court for a *Ginther*[1] hearing. But neither appellate counsel nor defendant submitted any affidavits or made an offer of proof regarding the facts that would be established at a *Ginther* hearing. Thus, defendant did not support his request with the materials necessary for a proper motion to remand. See MCR 7.211(C)(1)(a). Moreover,

---

[1] *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973).

defendant has failed to show that development of a factual record is required or that a remand is necessary. *Id*. Defendant's request to remand for a *Ginther* hearing is denied.

We affirm.

/s/ David H. Sawyer
/s/ Jane E. Markey
/s/ Colleen A. O'Brien