# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

CHARLES CLAY,

        Defendant-Appellant.

UNPUBLISHED
April 24, 2018

No.  335179
Wayne Circuit Court
LC No.  16-003010-02-FC

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

CHARLES CLAY,

        Defendant-Appellant.

No.  335395
Wayne Circuit Court
LC No.  16-003031-01-FC

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

CHARLES CLAY,

        Defendant-Appellant.

No.  336828
Wayne Circuit Court
LC No.  16-003011-02-FC

---

Before:  SAWYER, P.J., and MURRAY and STEPHENS, JJ.

PER CURIAM.

This consolidated appeal involves three cases that were joined for trial in the lower court. In Docket No. 335179, defendant appeals as of right his jury trial convictions of armed robbery, MCL 750.529, assault with intent to do great bodily harm less than murder (AWIGBH), MCL

-1-

750.84, felonious assault, MCL 750.82, and impersonating a public officer, MCL 750.215. He was sentenced, as a fourth-offense habitual offender, MCL 769.12, to 60 to 90 years' imprisonment for the armed robbery conviction, 10 to 20 years' imprisonment for the AWIGBH conviction, and 5 to 10 years' imprisonment each for the felonious assault and impersonation of a public officer convictions. In Docket No. 335395, defendant appeals as of right his jury trial convictions of armed robbery, felon in possession of a firearm (felon-in-possession), MCL 750.224f, and felony-firearm, MCL 750.227b. He was sentenced, as a fourth-offense habitual offender, to 25 to 75 years' imprisonment for the armed robbery conviction, 5 to 10 years' imprisonment for the felon-in-possession conviction, and two years' imprisonment for the felony-firearm conviction. Finally, in Docket No. 336828, defendant appeals by leave granted[1] his jury trial convictions of carjacking, MCL 750.529a, armed robbery, receiving and concealing stolen property – motor vehicle, MCL 750.535(7), and felony-firearm. He was sentenced, as a fourth-offense habitual offender, to 25 to 75 years' imprisonment for the carjacking and armed robbery convictions, to be served consecutively, 5 to 10 years' imprisonment for the receiving and concealing stolen property – motor vehicle conviction, and two years' imprisonment for the felony-firearm conviction. We affirm his convictions, but remand to the trial court for further explanation regarding defendant's consecutive sentence.

## I. PROSECUTORIAL ERROR

Defendant first argues that the prosecutor's questions to defendant on cross-examination and statements during closing argument improperly shifted the burden of proof, and that counsel was ineffective for failing to object.

To preserve a prosecutorial error challenge,[2] a defendant must contemporaneously object to the alleged misconduct and ask for a curative instruction. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). If a defendant fails to timely and specifically object below, review is generally precluded " 'except when an objection could not have cured the error, or a failure to review the issue would result in a miscarriage of justice.' " *People v Unger*, 278 Mich App 210, 234-235; 749 NW2d 272 (2008), quoting *People v Callon*, 256 Mich App 312, 329;

---

[1] *People v Clay*, unpublished order of the Court of Appeals, entered March 13, 2017 (Docket No. 336828).

[2] Although this type of issue is generally referred to as "prosecutorial misconduct," this Court has stated that, "the term 'misconduct' is more appropriately applied to those extreme . . . instances where a prosecutor's conduct violates the rules of professional conduct or constitutes illegal conduct," but that arguments "premised on the contention that the prosecutor made a technical or inadvertent error at trial" are "more fairly presented as claims of 'prosecutorial error[.]' " *People v Cooper*, 309 Mich App 74, 87-88; 867 NW2d 452 (2015) (citation omitted). Nevertheless, regardless of "what operative phrase is used, [this Court] must look to see whether the prosecutor committed errors during the course of trial that deprived defendant of a fair and impartial trial." *Id*. at 88, citing *People v Aldrich*, 246 Mich App 101, 110; 631 NW2d 67 (2001). Here, we will refer to defendant's argument as prosecutorial error, as the argument is limited to technical errors by the prosecutor.

662 NW2d 501 (2003). Defendant failed to object to the now-challenged questions or to the prosecutor's statements during closing argument. Thus, this issue is not preserved for appellate review.

Unpreserved issues of prosecutorial error are reviewed for "outcome-determinative, plain error." *Unger*, 278 Mich App at 235. To establish plain error "three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). " 'Reversal is warranted only when plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings.' " *Unger*, 278 Mich App at 235, quoting *Callon*, 256 Mich App at 329.

"[T]he test for prosecutorial [error] is whether a defendant was denied a fair and impartial trial." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). This Court "consider[s] issues of prosecutorial [error] on a case-by-case basis by examining the record and evaluating the remarks in context, and in light of defendant's arguments." *People v Thomas*, 260 Mich App 450, 454; 678 NW2d 631 (2004). In response to defendant's testimony that he could not have committed the crimes charged because he spent most of the night at the Motor City Casino, the prosecutor questioned defendant as follows:

> *Q*. If you were at Motor City Casino, there's there's [sic] tons of cameras around Motor City Casino, isn't there?
>
> *A*. Yes.
>
> *Q*. And did you ever obtain any of those cameras and say: Hey, obviously I wasn't involved in this carjacking. I'm on camera at Motor City Casino.
>
> *A*. Well, you all had got it to see if I wasn't there or nothing.

Then, during closing argument, the prosecutor stated:

> If you were at the casino, we know that those casinos have tons of security and cameras everywhere. He wasn't at that casino. He was at Mr. Dorel's home when he was carjacked and carjacked Mr. Dorel. He assaulted and stole from Ms. Hughes, and he beat Ms. McCalip, taking her $15 and in the process fracturing not only her face, her eye, her teeth but actually her life, as she testified.

"A prosecutor may not imply in closing argument that the defendant must prove something or present a reasonable explanation for damaging evidence because such an argument tends to shift the burden of proof." *People v Fyda*, 288 Mich App 446, 463-464; 793 NW2d 712 (2010). Nor may a prosecutor discuss a defendant's failure to present evidence. *Id*. at 464. However, "where a defendant testifies at trial or advances, either explicitly or implicitly, an alternate theory of the case that, if true, would exonerate the defendant, comment on the validity of the alternate theory cannot be said to shift the burden of proving innocence to the defendant." *People v Fields*, 450 Mich 94, 115; 538 NW2d 356 (1995). Thus, "when a defendant advances an alternate theory or alibi, 'the prosecution, by commenting on the nonproduction of

corroborating alibi witnesses, is merely pointing out the weakness in defendant's case' and not 'improperly shifting the burden of proof to the defendant.' " *Id*. at 112 (citation omitted).

Reviewing the prosecutor's questions and statement in context and in light of defendant's argument, we hold that the prosecutor did not improperly shift the burden of proof. Instead, the prosecutor simply attacked the credibility of defendant's alibi defense in comparison to the overwhelming evidence to the contrary.[3]   And any error was cured by the trial court's instructions to the jury that the prosecutor bears the burden of proving each element of the crimes charged, and that defendant was not required to prove his innocence or to do anything. *Unger*, 278 Mich App at 235. Accordingly, because defendant cannot demonstrate that the prosecutor's questions or comments amounted to plain error affecting the outcome of trial, his ineffective assistance of counsel argument also fails. Defense counsel need not make fruitless or meritless objections. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

## II.  SCORING ERROR

Next, defendant raises several scoring error challenges, and argues that he is entitled to resentencing on the basis of accurate information. To preserve a scoring error challenge, the defendant must raise the issue "at sentencing, in a motion for resentencing, or in a 'proper motion to remand' filed with this Court." *People v Jones*, 297 Mich App 80, 83; 823 NW2d 312 (2012), quoting MCL 769.34(10). Defendant preserved his challenge with regard to offense variables (OVs) 4, 12, and 14 by making the same scoring error arguments in his motions to remand as he makes on appeal.[4]

Defendant also preserved his challenge with regard to OV 7. However, defendant waived any challenge with regard to OV 9. At sentencing, when the prosecutor asked that the court assess 10 points for OV 9 in all three cases, defense counsel explicitly responded that he had no objection. See *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011).[5]

---

[3] In fact, during the prosecutor's closing argument, she explicitly reaffirmed her burden to prove the crimes charged beyond a reasonable doubt, stating: "At the beginning of this case, I spoke with you and indicated that I did have the burden to prove each element of each crime charged against Mr. Clay. And I told you that I welcome that burden and I do, and I do believe that going through this testimony and all the evidence presented that you'll agree with me that I have met my burden."

[4] Defendant filed separate motions to remand for each appeal. This Court denied all three motions. *People v Clay*, unpublished order of the Court of Appeals, entered March 3, 2017 (Docket Nos. 335179; 335395); *People v Clay*, unpublished order of the Court of Appeals, entered March 13, 2017 (Docket No. 336828).

[5] After defendant filed his initial briefs on appeal, the trial court appointed substitute appellate counsel. We denied new appellate counsel's request for an adjournment of oral arguments, but granted her the opportunity to file a supplemental brief adding new arguments. *People v Clay*, unpublished order of the Court of Appeals, entered January 26, 2018 (Docket Nos. 335179;

"Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). " 'Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake was made.' " *People v Brooks*, 304 Mich App 318, 319-320; 848 NW2d 161 (2014) (citation omitted). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Hardy*, 494 Mich at 438.

A sentencing court's factual determinations need only be supported by a preponderance of the evidence. *Hardy*, 494 Mich at 438. "When calculating the sentencing guidelines, a court may consider all record evidence, including the contents of a PSIR, plea admissions, and testimony presented at a preliminary examination." *People v McChester*, 310 Mich App 354, 358; 873 NW2d 646 (2015).

We first note that defendant failed to adequately brief this issue for appellate review. Although he argues that the trial court erred in scoring several OVs, he completely disregards the rule, articulated in *People v Francisco*, 474 Mich 82, 89 n 8; 711 NW2d 44 (2006), that a defendant is only entitled to resentencing where scoring errors altered his sentencing guidelines range. Defendant never states how, if at all, his sentencing guidelines range would be altered if his arguments succeed. Instead, he merely asserts he is entitled to resentencing on the basis of accurate information, with no analysis whatsoever regarding whether the alleged scoring errors affected his total OV scores or his sentencing guidelines ranges. An appellant "may not leave it to this Court to search for a factual basis to sustain or reject his position." *People v Traylor*, 245 Mich App 460, 464; 628 NW2d 120 (2001) (quotation marks and citation omitted). Nor may "[a]n appellant . . . merely announce his position and leave it to this Court to discover and rationalize the basis for his claims," or "give only cursory treatment . . . ." *People v Payne*, 285 Mich App 181, 195; 774 NW2d 714 (2009) (quotation marks and citation omitted).

Regardless, we hold that defendant is not entitled to resentencing. Although the trial court erred when it assessed 10 points for OV 4 in Docket No. 335395, and 25 points for OV 12 in all three cases, these errors were harmless because they did not alter his sentencing guidelines ranges.

---

335395; 336828). In the supplemental brief, along with raising an additional issue not raised in his previous briefs, defendant reiterates his prosecutorial and scoring error arguments, but also asserts that defense counsel did not properly object to the alleged scoring errors. However, he makes no argument and cites no law in support of this assertion. Thus, he has abandoned the issue for appellate review. See *People v Payne*, 285 Mich App 181, 195; 774 NW2d 714 (2009) (" 'An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority.' "). (Citation omitted.)

## A. OFFENSE VARIABLE 4

The trial court assessed 10 points for OV 4 in all three cases, but defendant only challenges the scores in Docket Nos. 335395 and 336828. A court must assess 10 points for OV 4 if "[s]erious psychological injury requiring professional treatment occurred to a victim." MCL 777.34(1)(a); *McChester*, 310 Mich App at 356. MCL 777.34(2) further provides: "Score 10 points if the serious psychological injury may require professional treatment. In making this determination, the fact that treatment has not been sought is not conclusive." A "trial court may assess 10 points for OV 4 if the victim suffers, among other possible psychological effects, personality changes, anger, fright, or feelings of being hurt, unsafe, or violated." *People v Armstrong*, 305 Mich App 230, 247; 851 NW2d 856 (2014).

A preponderance of the evidence supported the trial court's assessment of 10 points for OV 4 in Docket No. 336828, but not Docket No. 335395. Although "evidence of fear while a crime is being committed, *by itself,* is insufficient to assess points for OV 4," *People v White*, 501 Mich 160, 162; 905 NW2d 228 (2017), "a victim's fear while a crime is being committed may be highly relevant to determining whether he or she suffered a 'serious psychological injury [that] may require professional treatment' and thus may be considered together with other facts in determining how to score OV 4," *Id*. at 165 n 3 (alteration in original). Further, this Court has held that evidence a victim felt angry, hurt, violated, and frightened after a crime is sufficient to support an assessment of 10 points for OV 4. *People v Williams*, 298 Mich App 121, 124; 825 NW2d 671 (2012).[6] At trial, Gavrilovici testified that he was not only scared during the robbery and carjacking, but was also nervous when he testified at the preliminary examination because defendant had threatened his life, and was still scared. Thus, the record contains evidence of psychological injury beyond Gavrilovici's fear during the crime, and the trial court did not err when it assessed 10 points for OV 4 in Docket No. 336828.[7]

In contrast, we failed to locate any evidence in the record that Hughes suffered serious psychological injury. Accordingly, the court did err when it assessed 10 points for OV 4 in Docket No. 335395.

---

[6] In partial support of its holding, the *Williams* Court cited that portion of *People v Apgar*, 264 Mich App 321, 329; 690 NW2d 312 (2004), now overruled by the Supreme Court's decision in *White*, 501 Mich at 164, which held that evidence a victim was fearful during a crime is *alone* sufficient to support an assessment of 10 points for OV 4. Although that portion of *Williams* is no longer valid in light of *Apgar's* demise, the *Williams* Court relied in larger part on this Court's holding in *People v Waclawski*, 286 Mich App 634, 681; 780 NW2d 321 (2009), that evidence a victim was left feeling "pretty angry" and was trying to block the memory of a crime after its commission is sufficient, along with the fear occurring during the crime, for such a score. The *White* Court endorsed the use of *all* this evidence *together* for scoring OV 4. *White*, 501 Mich at 165 n 3.

[7] We note that even if the trial court did err when it assessed 10 points for OV 4 in Docket No. 336828, the error would not have altered defendant's sentencing guidelines range. MCL 777.62.

## B. OFFENSE VARIABLE 7

Moving to OV 7, the trial court assessed 50 points in all three cases, but defendant only challenges the score in Docket Nos. 335179 and 336828. Fifty points must be assessed for OV 7 if "[a] victim was treated with sadism, torture, excessive brutality, or similarly egregious conduct designed to substantially increase the fear and anxiety a victim suffered during the offense." MCL 777.37(1)(a). Thus, "[a] trial court can properly assess 50 points under OV 7 if it finds that a defendant's conduct falls under one of the four categories of conduct listed in subsection (1)(a)." *Hardy*, 494 Mich at 439-440.

Defendant acknowledges that the "allegations of [defendant] striking Ms. McCalip were horrific," but asserts that the trial court should have assessed zero points for OV 7 because the crime occurred in a short period of time. This argument is absurd. That defendant treated McCalip with excessive brutality is clear from the record. This Court has defined "excessive brutality" as "savagery or cruelty beyond even the 'usual' brutality of a crime." *People v Glenn*, 295 Mich App 529, 533; 814 NW2d 686 (2012), rev'd on other grounds sub nom *People v Hardy*, 494 Mich 430 (2013). McCalip testified that immediately after defendant opened her car door, he hit her in the head with a hammer. He then proceeded to threaten her life while she bled from the eye. As a result of the hammer strike, McCalip suffered fractures around her orbital bone, and a broken jaw. No sensible argument can be made that defendant's behavior was not savage and did not extend beyond the usual brutality of armed robbery. To rob McCalip, defendant could have just threatened her by brandishing a weapon, but instead chose to hit her with a hammer, inflicting gruesome injuries. See *Hardy*, 494 Mich at 446 (reasoning that the defendant's conduct went beyond that necessary to commit armed robbery because he could have put the victims in fear by presenting a weapon rather than striking two victims in the head). Thus, the trial court did not err when it assessed 50 points for OV 7 in Docket No. 335179.

Additionally, although supported by less egregious facts, the trial court did not err when it assessed 50 points for OV 7 in Docket No. 336828. As the Michigan Supreme Court reasoned in *Hardy*:

> Since the "conduct designed" category only applies when a defendant's conduct was designed to substantially *increase* fear, to assess points for OV 7 under this category, a court must first determine a baseline for the amount of fear and anxiety experienced by a victim of the type of crime or crimes at issue. To make this determination, a court should consider the severity of the crime, the elements of the offense, and the different ways in which those elements can be satisfied. Then the court should determine, to the extent practicable, the fear or anxiety associated with the minimum conduct necessary to commit the offense. Finally, the court should closely examine the pertinent record evidence, including how the crime was actually committed by the defendant. [*Hardy*, 494 Mich at 442-443.]

Thus, "all relevant evidence should be closely examined to determine whether the defendant engaged in conduct beyond the minimum necessary to commit the crime, and whether it is more probable than not that such conduct was intended to make the victim's fear or anxiety increase by a considerable amount." *Id*. at 443.

The trial court did not state on the record its reason for assessing 50 points for OV 7 in Docket No. 336828, but we hold that a preponderance of the evidence supported the finding that defendant's conduct toward Gavrilovici extended beyond the minimum required to commit carjacking and armed robbery, and was designed to substantially increase his fear and anxiety. Carjacking requires that a defendant use "(1) 'force or violence,' (2) 'the threat of force or violence,' or (3) put 'in fear any operator, passenger, or person in lawful possession of the motor vehicle," *id*. at 444, and robbery can be perpetrated through force or violence, assault, or putting someone in fear, *id*. at 446. Thus, to rob and carjack Gavrilovici, defendant could have simply put him in fear by exposing his gun and asking for his keys and belongings. Instead, however, the evidence demonstrates that defendant made Gavrilovici fear for his life repeatedly throughout the entire incident. Gavrilovici testified that defendant pointed a gun to his back before demanding money. Then, when Gavrivolici's phone rang unexpectedly, defendant threated to shoot if he answered. Further, when Gavrilovici tried to trick defendant into thinking he would be unable to start the Mustang, defendant said that if the car did not start, he would shoot Gavrilovici. Accordingly, the trial court did not err when it assessed 50 points for OV 7 in Docket No. 336828. See *People v Hornsby*, 251 Mich App 462, 468-469; 650 NW2d 700 (2002) (upholding the assessment of 50 points for OV 7 in an armed robbery case where the defendant held the victim at gunpoint, cocked the gun, and repeatedly threatened the victim because such conduct was designed to substantially increase the victim's fear and anxiety).

## C. OFFENSE VARIABLE 9

Next, as stated above, we hold that defendant waived his challenge to the scoring of OV 9, despite the prosecution's concession that the trial court improperly assessed 10 points for OV 9 in Docket Nos. 335395 and 336828. "Waiver has been defined as the intentional relinquishment or abandonment of a known right." *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000) (quotation marks citations omitted). "When defense counsel clearly expresses satisfaction with a trial court's decision, counsel's action will be deemed to constitute a waiver." *Kowalski*, 489 Mich at 503. And a statement by counsel that he or she has no objections amounts to an expression of satisfaction. *Id*. at 504-505. At sentencing, when the trial court asked defense counsel if he had any objections to the prosecutor's request that OV 9 be assessed at 10 points in each case, defense counsel said, "I don't have any objection."[8] Thus, defendant expressed satisfaction with the assessment of 10 points for OV 9 in all three cases, and waived any challenge.

## D. OFFENSE VARIABLE 12

Considering OV 12 next, as defendant asserts, the court erred when it assessed 25 points in each case. Twenty-five points must be assessed for OV 12 where "[t]hree or more

---

[8] This case is distinguishable from *People v Hershey*, 303 Mich App 330; 844 NW2d 127 (2013). There, this Court, noting the differences between scoring challenges and challenges to jury instructions, held that the defendant did not waive challenges to the scoring of two OVs when defense counsel merely stated that defendant had no additions or corrections to the presentence report. *Id*. at 349-354.

contemporaneous felonious criminal acts involving crimes against a person were committed." MCL 777.42(1)(a). To be contemporaneous, the acts must both occur within 24 hours of the sentencing offense, and not result in separate convictions. MCL 777.42(2)(a)(*i*) and (*ii*).

Although OV 12 was never discussed at sentencing, the record contains no evidence of contemporaneous felonious criminal acts beyond those that defendant was convicted of or charged with. Thus, the trial court erred when it assessed 25 points for OV 12 in all three cases.

### E. OFFENSE VARIABLE 14

Finally, the trial court assessed 10 points for OV 14 in all three cases. OV 14 involves an offender's role in a crime. MCL 777.44. Ten points should be assessed where "[t]he offender was a leader in a multiple offender situation." MCL 777.44(1)(a). To score OV 14, a court should consider "[t]he entire criminal transaction." MCL 777.44(2)(a). If two offenders are involved, only one may be considered the leader. *People v Rhodes (On Remand)*, 305 Mich App 85, 88; 849 NW2d 417 (2014). The statute contains no definition of the word "leader." *Id*. at 90. While a "defendant's exclusive possession of a gun during the criminal transaction is *some* evidence of leadership, . . . it does not meet the preponderance of the evidence standard found in *Hardy*." *Id*.

Defendant's support for his argument that the trial court should have assessed zero points for OV 14 in all three cases is cursory and wholly deficient at best. He asserts only that "[n]othing in the record distinguished [defendant] as the leader with regard to these offenses." An appellant "may not leave it to this Court to search for a factual basis to sustain or reject his position." *Traylor*, 245 Mich App at 464. Nevertheless, a preponderance of the evidence clearly supported the trial court's determination that defendant acted as the leader in all three incidents. It was defendant who approached Gavrilovici with a gun, demanded his belongings and car key, threatened to shoot, and drove away in the Mustang. According to Gavrilovici, Echols merely stood behind throughout robbery. With regard to Hughes, although Echols ran to the car with a gun and unlocked the door for defendant, defendant was driving when he cut Hughes off in the Mustang, and he punched Hughes twice in the eye while demanding everything she had after he entered the passenger side of her vehicle. Further, during the McCalip robbery, it was defendant who identified himself as a police officer, and forced her window done before hitting her with a hammer. According to McCalip, Echols just stood behind her as defendant continued his assault, and complied when defendant told him to get her purse out of the car. From this evidence, the court did not err in concluding that defendant took the initiative and acted as the leader in all three robberies. Thus, the trial court properly assessed 10 points for OV 14 in all three cases.

Defendant's prior record variable (PRV) score is 92 in all three cases,[9] placing him in PRE-level F, and his total OV score is 156 points in Docket No. 335179, and 140 points in

---

[9] We note that there appear to be multiple typos on the sentencing information reports in each case. At sentencing, the court appeared to assess 50 points for PRV 1 in all three cases, but only changed the score to 50 in the SIR for Docket No. 335179. With that change, the total PRV score in each case is 92. However, in each of the SIRs, the total PRV score is listed as 82.

Docket Nos. 335395 and 336828, placing him in OV-level VI. MCL 777.62. The subtraction of 35 points from defendant's OV score in Docket No. 335395 does not alter his OV level. Nor does the subtraction of 25 points from defendant's OV scores in Docket Nos. 335179 and 336828 alter his OV level. Thus, defendant is not entitled to resentencing because any errors made by the trial court in scoring the guidelines did not alter his sentencing guidelines ranges. *Francisco*, 474 Mich at 89 n 8.[10]

## III. CONSECUTIVE SENTENCE

In Docket No. 336828, defendant challenges the trial court's imposition of a consecutive sentence pursuant to MCL 750.529a(3). He argues that the trial court failed to articulate its reasons for imposing this sentence, in contravention of this Court's holding in *People v Norfleet*, 317 Mich App 649; 897 NW2d 195 (2016), and that "regardless of any rationale that the trial court might articulate on remand, any imposition of consecutive sentences in this case constitutes an abuse of discretion."

As a matter of first impression, the *Norfleet* Court held that "when a statute grants a trial court discretion to impose a consecutive sentence, the trial court's decision to do so is reviewed for an abuse of discretion, i.e., whether the trial court's decision was outside the range of reasonable and principled outcomes." *Id*. at 654. "Review of a discretionary decision requires that the trial court set forth the reasons underlying its decision." *Id*. at 664, citing *People v Broden*, 428 Mich 343, 350-351; 408 NW2d 789 (1987). Thus, the Court in *Norfleet* reasoned, remand is necessary when a trial court imposes a consecutive sentence pursuant to a statute granting it that discretion, but fails to "give particularized reasons – with reference to the specific offenses and the defendant – to impose [the] sentence[.]" *Norfleet*, 317 Mich App at 666.

The trial court sentenced defendant, pursuant to MCL 750.529a(3),[11] to consecutive terms of 25 to 75 years' imprisonment for his carjacking and armed robbery convictions in Docket No. 336828. However, the trial court failed to provide any explanation for doing so. And despite the prosecution's argument that *Norfleet* was wrongly decided, "[a] published opinion of the Court of Appeals has precedential effect under the rule of stare decisis." MCR 7.215(C)(2).

---

Further, on the SIRs for Docket Nos. 335179 and 335395, the court listed the total OV score as 165, the number supplied by the prosecutor at sentencing, but when adding the OV scores listed, the OV total is 156 in Docket No. 335179, and 140 in Docket No. 335395. And in the SIR for Docket No. 336828, the court listed 80 as the total OV score, but the OV scores added together equal a total of 140 points. Defendant wholly fails to address these discrepancies in his briefs on appeal.

[10] The trial court acknowledged and imposed upon defendant, as a fourth-offense habitual offender, a mandatory minimum sentence of 25 years' imprisonment pursuant MCL 769.12(1)(a), in all three cases.

[11] MCL 750.529a(3) provides: "A sentence imposed for a violation of this section may be imposed to run consecutively to any other sentence imposed for a conviction that arises out of the same transaction."

Accordingly, we are bound to follow the holding in *Norfleet*, and must remand to the trial court for further sentencing proceedings regarding its consecutive sentence.

## IV. EVIDENTIARY ERROR

Finally, in his supplemental brief, defendant argues that the trial court erred when it admitted into evidence Detective Christopher Staton's written statement describing a gas station surveillance video from the night of the robberies, and allowed Detective Station to testify regarding the identity of the men in the video. He asserts that these errors invaded the province of the jury. However, we fail to comprehend how these supposed errors could have harmed defendant's case in any way. Not only did the jury have the opportunity to view the video itself and come to its own conclusions, but defendant testified at trial, and admitted that it was him in the video.

We affirm defendant's convictions, but remand to the trial court for further explanation regarding defendant's consecutive sentence. We do not retain jurisdiction.

/s/ David H. Sawyer
/s/ Christopher M. Murray
/s/ Cynthia Diane Stephens