# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellee,

v

ERIC GERARD ELDER,

    Defendant-Appellant.

UNPUBLISHED
October 18, 2018

No. 339562
Wayne Circuit Court
LC No. 17-000987-01-FC

Before: O'BRIEN, P.J., and K. F. KELLY and FORT HOOD, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of first-degree murder, MCL 750.316, felonious assault, MCL 750.82, felon in possession of a firearm (felon-in-possession), MCL 750.224f, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant was sentenced to concurrent sentences of life imprisonment without the possibility of parole for the first-degree murder conviction, two to four years' imprisonment for the felonious assault conviction, and two to five years' imprisonment for the felon-in-possession conviction, to be served consecutively to the mandatory two-year term of imprisonment for felony-firearm. We affirm.

## I. FACTS

This case arises from the shooting death of Samuel Patton, Sr. (Patton, Sr.), who was shot multiple times from behind on December 19, 2016, while sitting in his motor vehicle with his 11-year-old son, S.P.,[1] in the backseat. Patton Sr. had just returned to his home at 12145 Stout Street in Detroit, Michigan at approximately 9:00 p.m. after having dinner with his long-time girlfriend, Chandra Young, and their other child, Samuel Patton, Jr (Patton, Jr.), when the shooter approached his vehicle, shooting Patton Sr. multiple times in the back and neck and shattering the back window of the vehicle. Young and Patton Jr. had just entered the family home when the shooting began, but ran out of the home when they heard shots fired and Young was able to see the shooter as he fired the final shots and fled the scene.

---

[1] Because S.P. is a minor he will be referred to by his initials.

-1-

## II. GREAT WEIGHT OF THE EVIDENCE

### A. PRESERVATION OF THE ISSUE AND STANDARD OF REVIEW

Defendant first argues that his convictions should be vacated because the jury's verdict was against the great weight of the evidence where the identification of defendant as the shooter was unreliable. We disagree.

A defendant must raise the argument that a jury's verdict was against the great weight of the evidence in a motion for a new trial in order to preserve that issue for appellate review. *People v Lopez*, 305 Mich App 686, 695; 854 NW2d 205 (2014). Before filing his appeal, defendant moved the trial court for a judgment notwithstanding the verdict (JNOV) on the basis that the prosecution did not establish that the shooting of Patton Sr. was deliberate and premediated. Notably, defendant did not challenge the prosecution's evidence identifying defendant as the shooter. Therefore, the issue is not preserved for appellate review.

This Court reviews an unpreserved challenge to the great weight of the evidence for plain error affecting the defendant's substantial rights. *People v Musser*, 259 Mich App 215, 218; 673 NW2d 800 (2003). Under the plain error standard, the defendant must satisfy three requirements: "1) error must have occurred, 2) the error was plain, i.e., clear or obvious, and 3) the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). The third prong requires that the defendant establish prejudice where "the error affected the outcome of the lower court proceedings." *People v Borgne*, 483 Mich 178, 196-197; 768 NW2d 290, reh gtd on other grounds 485 Mich 868 (2009). Even if all three requirements are met, "[r]eversal is warranted only when plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings." *People v Callon*, 256 Mich App 312, 329; 662 NW2d 501 (2003).

A new trial may be granted if the verdict is against the great weight of the evidence. MCR 2.611(A)(1)(e). The relevant inquiry "to determine whether a verdict is against the great weight of the evidence is whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *People v Lacalamita*, 286 Mich App 467, 469; 780 NW2d 311 (2009). A verdict is against the great weight of the evidence "only when the evidence does not reasonably support it and it was more likely the result of causes outside the record, such as passion, prejudice, sympathy, or some other extraneous influence." *Id*. A new trial is only appropriate if the witness testimony contradicts "indisputable physical facts or laws," is "patently incredible" or defies physical realities, is "so inherently implausible that it could not be believed by a reasonable juror," or was "seriously impeached in a case that was marked by uncertainties and discrepancies." *People v Bosca*, 310 Mich App 1, 13; 871 NW2d 307 (2015) (citations and quotation marks omitted).

### B. ANALYSIS

The thrust of defendant's argument on appeal is that Young's identification of defendant was unreliable and consisted of numerous frailties. For example, defendant alleges that Young was not present when the shooter fired shots at Patton, Sr., and that because Patton, Jr. testified that he could not see the shooter as the shooter left the scene and where the shooter's face was

obscured by a hoody, that Young likewise would not have been able to clearly identify the shooter. Defendant also points out that Young saw the shooter for a very short time under stressful circumstances, and therefore her identification of defendant is "patently incredible." While cognizant of defendant's arguments, our review of the record confirms that the jury's verdict is not against the great weight of the evidence. Young testified that she ran outside the family home when she heard shooting and that she clearly saw the shooter's face as he shot into the back of Patton, Sr.'s car. Young confirmed during her trial testimony that the area outside the home was well-illuminated[2] and during her cross-examination by defense counsel stated that she had "clear sight" to see the shooter. Additionally, Patton, Jr. testified that Young was the first to run outside and that the shooter stopped shooting when Young yelled out, which allowed Young to see the shooter's face. After identifying the shooter to the police in the hours after the shooting, Young was subsequently able to identify defendant from a "six-pack" photographic lineup that the police prepared for her. During cross-examination, Young also denied defense counsel's allegations that she could only see the shooter for a very short period of time and that she was unable to see the shooter's face because he was wearing a hoody. Defense counsel spent a significant amount of time questioning S.P., Young and Patton Jr. regarding the circumstances under which they were able to view the shooter. While we acknowledge that S.P. and Patton Jr. gave identifications of the shooter that may not have been consistent with defendant's appearance, these inconsistencies were for the jury to evaluate and consider.[3] *People v Harverson*, 291 Mich App 171, 179; 804 NW2d 757 (2010).

To the extent that defendant, in a cursory fashion, appears to challenge Young's identification of him from the photographic array on the basis that her identification was the product of impermissibly suggestive pretrial procedures, we observe that defendant has not presented legal authority in support of this contention. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment [of an issue] with little or no citation of supporting authority." *People v Watson*, 245 Mich App 572, 587; 629 NW2d 411 (2001) (citation and quotation marks omitted). In any event, our review of the record evidence confirms that the photographic array and the procedures that the police undertook with regard to it were not unduly suggestive. This Court evaluates the fairness of an identification procedure "in light of the total circumstances to determine whether the procedure was so impermissibly suggestive that it led to a substantial likelihood of misidentification." *People v Hornsby*, 251 Mich App 462, 466; 650 NW2d 700 (2002) (citations omitted). "Physical differences among the lineup participants do not necessarily render the procedure defective and are significant only to the extent that they are

---

[2] Detective Jesus Colon with the Detroit Police Department attended the scene shortly after the shooting and during his trial testimony he confirmed that the scene of the shooting was well-illuminated by both a porch light on the family home as well as street lights.

[3] During his trial testimony S.P. testified that the shooter had dark skin and facial hair, and during cross-examination agreed that at the preliminary examination he stated that the shooter was "short" and "fat" and looked to be 20 years old. The record reflects that defendant was born May 22, 1965. Patton Jr. testified that he could not see the shooter's face as his view was obstructed by the shooter's hoody, but he also described the shooter's build as "chubby."

apparent to the witness and substantially distinguish the defendant from the other lineup participants." *Id*. Similarly, any physical differences will generally pertain to the weight of the identification as opposed to its admissibility. *Id*.

During trial, defense counsel questioned Young, as well as Detroit Police Department Detective Scott Shea, the officer in charge of this investigation, concerning the circumstances giving rise to Young's identification of defendant from the photographic array. Specifically, Detective Shea testified that after Young identified the shooter in an interview shortly after the shooting, he returned to the police station, and in accordance with usual police procedures, he put together a photographic array of defendant with five other individuals. Detective Shea reported that once presented with the photographic array, Young immediately identified defendant. Defense counsel also questioned Detective Shea regarding how he prepared the photographic array and the circumstances under which he presented it to Young. Further, defense counsel attempted to challenge Young's identification of defendant as the shooter by questioning Young during cross-examination regarding how she did not tell the 911 operator when she called 911 immediately after the shooting that she could identify the shooter. Defense counsel also asked Young extensively about the circumstances of her identification of defendant from the photographic array and if she was influenced by the police or her sons to identify defendant as the shooter. In response to defense counsel's questioning on the issue of defendant's appearance in the photographic array, Young also confirmed that the fact that defendant wore bright clothing in his photograph in no way distinguished him from the other individuals in the photographic array. All six individuals in the photographic array were African-American males with facial hair and shortly-cropped hair. While defendant's shirt was brightly colored, at least one other participant in the photographic array had a brightly colored shirt. Thus, there is no suggestion from the record that the composition of the photographic array was impermissibly suggestive to the extent that it would have given rise to a substantial likelihood of misidentification. See *id*. Accordingly, we are not persuaded that the jury's verdict is against the great weight of the evidence.

### III. SUFFICIENCY OF THE EVIDENCE

### A. STANDARD OF REVIEW

Defendant next argues that there was insufficient evidence to support his convictions of first-degree murder, felonious assault, felon-in-possession, and felony-firearm. We disagree.

We review de novo defendant's challenge to the sufficiency of the evidence. *People v Carll*, 322 Mich App 690, 694 n 1; 915 NW2d 387 (2018). Reviewing the evidence in a light most favorable to the prosecution, this Court asks whether a "rational trier of fact could find the defendant guilty beyond a reasonable doubt." *People v Hardiman*, 466 Mich 417, 421; 646 NW2d 158 (2002). It is the role of the factfinder, rather than this Court, to determine the weight of the evidence and the credibility of witnesses. *People v Lee*, 243 Mich App 163, 167; 622 NW2d 71 (2000). "Circumstantial evidence and the reasonable inferences that arise from that evidence can constitute satisfactory proof of the elements of the crime." *People v Henderson*, 306 Mich App 1, 9; 854 NW2d 234 (2014). This Court resolves any evidentiary conflicts in favor of the prosecution. *Id*.

## B. ANALYSIS

Echoing his arguments presented in support of his challenge with regard to the great weight of the evidence, defendant contends there was insufficient evidence to establish that defendant was the shooter. Defendant points to the same evidence that he relied on in arguing that the jury's verdict was against the great weight of the evidence—mainly, that the evidence was insufficient to support his convictions because Young's identification of defendant was "inherently implausible." Defendant does not challenge the sufficiency of the evidence with respect to any other specific element of any of the crimes of which he was convicted.

"[I]dentity is an element of every offense," *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008), and the burden is on the prosecution to establish the identity of the accused in order to prove the defendant's guilt beyond a reasonable doubt, *People v Kern*, 6 Mich App 406, 409; 149 NW2d 216 (1967). Contrary to defendant's arguments, there was ample direct and circumstantial evidence presented to the jury to establish that defendant was the shooter. For example, Young testified when she came out of her house, she saw defendant shooting into the back of Patton, Sr.'s car. Young identified defendant from the photographic array shortly after the shooting. Young also clearly, and without hesitation, identified defendant as the shooter at trial. A witness's positive identification may be sufficient to support a guilty conviction. See *People v Davis*, 241 Mich App 697, 700; 617 NW2d 381 (2000) (recognizing that "this Court has stated that positive identification by witnesses may be sufficient to support a conviction of a crime."). "The credibility of identification testimony is a question for the trier of fact that [this Court does] not resolve anew." *Id*.

That defendant was the individual who shot Patton Sr. multiple times was also established by circumstantial evidence. In addition to direct evidence, identity can be established by circumstantial evidence. See *People v Bass*, 317 Mich App 241, 264-265; 893 NW2d 140 (2016) (concluding that there was sufficient circumstantial evidence, even if based on inferences, to establish the defendant's identity as the perpetrator of the charged offenses). This is because circumstantial evidence is, at times, stronger than direct evidence. *People v Wolfe*, 440 Mich 508, 526; 489 NW2d 748, amended 441 Mich 1201 (1992). During defendant's police interrogation, defendant admitted that he has had the same cellular telephone number for several years and that he had his cellular telephone with him on December 19, 2016. Defendant also admitted that he drove past Anthony Vaughn's house, where his wife Ebony Bradley worked, which is across the street from Patton, Sr.'s house, on December 19, 2016. Special Agent Stan Brue testified that he analyzed the cellular telephone records for the cellular telephone number that defendant gave to the police during his interrogation. Significantly, Special Agent Brue also confirmed that defendant's cellular telephone was within .8 miles of 12145 Stout Street at the time of the shooting. Special Agent Brue also noted that defendant's cellular telephone number made three phone calls at the same time that a black Hummer was seen driving past 12145 Stout Street earlier in the evening. The record evidence established that defendant drove a black Hummer. In addition, defendant stated during his police interrogation that he knew Patton, Sr. and Bradley had a relationship at one point before defendant met and married Bradley. From the questioning in his police interrogation, it was very apparent that Bradley and defendant have significant trust issues in their marriage, as both would routinely check up on the other to make sure that the other was being truthful about their location. Although defendant was adamant that he did not have any hostility towards Patton, Sr., Bradley's previous relationship with Patton, Sr.

-5-

was one more piece of evidence that the jury could consider to conclude that defendant had a motive to shoot Patton, Sr. Therefore, when viewing the record evidence, and the reasonable inferences arising from that evidence, in the light most favorable to the prosecution, *Hardiman*, 466 Mich at 421, a rational trier of fact could reasonably conclude that defendant shot and killed Patton, Sr.

## IV. CONCLUSION

We affirm, but remand for the limited purpose of correcting the judgment of sentence, which reflects that defendant was convicted of first-degree murder, felonious assault, felon-in-possession and felony-firearm after tendering a plea of guilt. *People v Avant*, 235 Mich App 499, 521-522; 597 NW2d 864 (1999). We do not retain jurisdiction.

/s/ Colleen A. O'Brien
/s/ Kirsten Frank Kelly
/s/ Karen M. Fort Hood